UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VINCENT CASTILLO MARENTES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 15-CV-05616-LHK<br><br>**ORDER REGARDING APPLICATION OF *COLORADO RIVER* ABSTENTION**<br><br>Re: Dkt. Nos. 20, 21, 22 |

Plaintiffs Liudmela Bichegkueva ("Bichegkueva") and Vincent Marentes ("Marentes") bring this action against Defendant State Farm Automobile Insurance Company ("State Farm"). Before the Court are briefs filed by the parties regarding whether *Colorado River* abstention applies to the instant action. ECF No. 20 ("Pls. Br."); ECF No. 21 ("Def. Br."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court finds that *Colorado River* abstention does not apply to the instant action.

**I.    BACKGROUND**

   **A. Factual Background**

      **1. *Marentes I***

On June 16, 2013, Bichegkueva "suffered permanent physical, emotional and disabling

injuries as the result of her vehicle being rear ended at 65 m.p.h. by [a] tow truck driven by . . . Marentes." ECF No. 1 ("Compl.") ¶ 1. On December 12, 2013, Bichegkueva filed a personal injury action against Marentes and Extreme Towing, Marentes' employer, for injuries arising out of this June 16, 2013 incident. *Id.* ¶ 2. This case was originally filed in San Francisco County Superior Court, before being transferred to Santa Clara County Superior Court. All proceedings in this action shall be referred to as *Marentes I*.

Shortly after Bichegkueva filed her complaint in *Marentes I*, Marentes requested that State Farm, Marentes' insurer, provide Marentes with a defense and, if necessary, indemnify Marentes against any settlement or judgment. State Farm denied Marentes' request, on the grounds that the tow truck Marentes was driving was owned by Extreme Towing and thus did not fall within the purview of Marentes' insurance coverage. *See, e.g.*, *id.* ¶ 6–7. In the wake of State Farm's decision, Marentes and Extreme Towing retained Robert Aaron ("Aaron") to represent them in *Marentes I*.

In December 2014, Marentes and Bichegkueva entered into a settlement agreement in *Marentes I*. *Id.* ¶ 9. This agreement contained two terms pertinent to the instant action. First, under the settlement agreement, Marentes "would sign a stipulation striking his Answer to [the *Marentes I*] Complaint and allow a default to be entered" against him. *Id.* Thereafter, Bichegkueva would schedule a prove-up hearing for a judicial determination as to her total damages. *Id.* Second, Marentes agreed to "assign[] to [Bichegkueva] all of his rights against State Farm, except [for] Marentes' claims for emotional distress and punitive damages." *Id.*

On February 23, 2015, Bichegkueva's counsel notified State Farm of the settlement agreement, and gave State Farm "one last chance to defend Marentes." *Id.* ¶ 10. Should State Farm decline this opportunity, Bichegkueva would move forward and have a default and judgment entered against Marentes. On March 12, 2015, State Farm notified Bichegkueva that State Farm would begin providing a defense for Marentes. *Id*. In the weeks following this notification, however, State Farm failed to file any documents in state court challenging the terms of the settlement agreement or asserting a coverage defense.

2

Having not heard from State Farm for nearly two months, Bichegkueva proceeded to file, on April 22, 2015, a motion to enforce the settlement agreement against Marentes. *Id.* ¶ 11. A hearing on this motion was set for May 19, 2015. *Id.* On May 12, 2015, Kevin Cholakian ("Cholakian") "introduced himself to Marentes" and stated that he had been "appointed [as] defense counsel for Marentes." *Id.* ¶ 12. Cholakian requested that Marentes sign an Association of Counsel form, and Marentes complied. *Id.*

On May 15, 2015, Cholakian filed, on behalf of Marentes, an opposition to Bichegkueva's motion. *Id.* ¶ 18. State Farm argued against enforcement of the settlement agreement because Marentes could not, under Marentes' insurance policy, assign any rights to Bichegkueva without State Farm's prior approval. *Id.* The opposition further described State Farm as the "real party in interest" in *Marentes I*. *Id.* ¶ 20.

At the May 19, 2015 hearing, Superior Court Judge Joseph Huber, the presiding judge in *Marentes I,* rejected State Farm's arguments. Judge Huber found State Farm's opposition to be untimely and stated that "there was nothing that he could do at that time" since Bichegkueva and Marentes had already entered into a stipulated settlement agreement. *Id.* ¶ 21. Judge Huber, however, invited State Farm to file a motion for reconsideration where State Farm could present its various arguments and defenses, and State Farm agreed to do so. At the hearing's conclusion, Judge Huber directed the Clerk to (1) file an order granting Bichegkueva's motion to enforce the settlement agreement, (2) strike Marentes' answer from the record, and (3) enter default against Marentes. *Id.* On May 22, 2015, Cholakian sent Bichegkueva and Marentes a letter informing them that Cholakian "would be filing a motion to set aside the default against Marentes." *Id.* ¶ 25.

Nearly a year has passed since Judge Huber's May 19, 2015 ruling and Cholakian's May 22, 2015 letter. State Farm has still not filed a motion for reconsideration in *Marentes I*, despite Judge Huber's invitation that State Farm do so. In addition, State Farm has still not filed a motion to set aside the default against Marentes, despite State Farm's statement that it would do so. A prove-up hearing in *Marentes I* is currently scheduled for May 26, 2015. The purpose of this hearing is to determine the amount of damages that Bichegkueva should receive. This hearing

appears to be the only remaining matter left to resolve in *Marentes I*.

### 2. *Marentes II*

On May 20, 2015, one day after Judge Huber's ruling in *Marentes I*, State Farm informed Marentes that "State Farm ha[d] concluded [that Marentes'] claim [was] not covered by [Marentes'] Automobile Policy." ECF No. 1 ("ROR Letter") at 40. Nevertheless, State Farm agreed to continue providing Marentes a defense in *Marentes I* "pursuant to a full reservation of rights." *Id.* "In this regard, State Farm specifically reserve[d] the right to . . . seek reimbursement [for] any payments made, including payments of settlement or judgment against you, and defense fees and costs." *Id.* State Farm further "reserve[d] the right to file a declaratory relief action to obtain [a] determination with respect to whether there is a duty to defend or indemnify [Marentes] from [Bichegkueva's] claim." *Id.*

On May 28, 2015, Aaron, the counsel originally retained by Marentes and Extreme Towing in *Marentes I*, responded to State Farm's May 20, 2015 letter. Aaron's response stated that, if State Farm's "defense [was] offered subject to . . . a right to reimbursement, the defense is hereby rejected, and [State Farm's] defense counsel is directed to immediately cease ALL work on Mr. Marentes' behalf." ECF No. 1 ("Aaron Resp.") at 46.

As Aaron summarized, Marentes had requested that State Farm provide him with a defense in *Marentes I*, and State Farm had declined to do so for almost the entirety of *Marentes I*. *Id.* at 46–47. On March 12, 2015—a full three months after Bichegkueva and Marentes had agreed to settle *Marentes I*—State Farm finally informed the *Marentes I* parties that State Farm would begin providing Marentes with a defense. State Farm proceeded to file an untimely opposition to Bichegkueva's motion to enforce the settlement agreement, which Judge Huber found unavailing.

Although State Farm stated that it would move for reconsideration of Judge Huber's May 19, 2015 ruling and that it would move to set aside the default against Marentes, State Farm did not file any such motions. Indeed, it appears that the only document that State Farm filed on Marentes' behalf was the untimely opposition described above. In addition, it does not appear that State Farm ever informed Marentes prior to May 20, 2015 that State Farm defended Marentes

subject to a right of reimbursement or to an action for declaratory relief. As Aaron noted, "had [Aaron] known [of] State [F]arm's intent to seek . . . reimbursement from its insured for providing a defense," Aaron would have never allowed State Farm to associate as counsel in *Marentes I*. *Id.* at 47–48.

Although State Farm eventually informed Marentes that it would not pursue reimbursement for defense costs, State Farm did, on May 21, 2015, file a declaratory relief action in the U.S. District Court for the Northern District of California. This action was assigned to the undersigned judge, and all proceedings in this action shall be referred to as *Marentes II*.

The *Marentes II* complaint contained two causes of action: one cause of action seeking "a declaration that State Farm ha[d] no duty . . . to defend Marentes from any claims brought against him by Liudmela Bichegkueva," and one cause of action seeking "a declaration that State Farm ha[d] no duty . . . to indemnify Marentes from any claims brought against him by Liudmela Bichegkueva." *State Farm Mut. Auto. Ins. Co. v. Marentes*, 2015 WL 6955012, *2 (N.D. Cal. Nov. 10, 2015).

On November 10, 2015, this Court dismissed State Farm's complaint with prejudice. Pursuant to the U.S. Supreme Court's decision in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942), which provides guidance on when a district court may dismiss a declaratory relief action, the Court determined (1) that State Farm's claims would require the Court to engage in a "needless determination of state law issues," 2015 WL 6955012, *4–*6; (2) that State Farm had, in filing *Marentes II*, sought to engage in impermissible forum shopping, *id.* at *6; and (3) that any rulings in *Marentes II* could result in duplicative litigation, *id.* at *7. As the Court observed, "State Farm could have and should have raised its claims in state court, whether in [*Marentes I*] (as State Farm was expressly invited to do by Judge Huber) or in a separate suit in state court." *Id.*

### 3. *Marentes III*

On November 12, 2015, Bichegkueva and Marentes filed the instant action in Alameda County Superior Court. All proceedings in this action shall be referred to as *Marentes III*. The

5

*Marentes III* complaint asserts four causes of action: (1) breach of the covenant of good faith and fair dealing; (2) breach of contract; (3) fraud and concealment, and (4) violation of California Business and Professions Code § 17200. Specifically, Bichegkueva and Marentes allege that State Farm tendered its defense in *Marentes I* in bad faith and in breach of Marentes' insurance contract. Compl. ¶¶ 31–64. Bichegkueva and Marentes further allege that State Farm fraudulently concealed the fact that it would seek reimbursement and declaratory relief against Marentes. *Id.* ¶¶ 65–72. Finally, Bichegkueva and Marentes aver that State Farm violated various provisions of the California Insurance Code. *Id.* ¶¶ 73–74. Bichegkueva and Marentes seek injunctive relief, damages, and attorney's fees and costs.

### B. Procedural History

On December 8, 2015, State Farm filed an answer to the *Marentes III* complaint. A day later, State Farm removed *Marentes III* to federal court. *Marentes III* was originally assigned to U.S. District Judge Richard Seeborg. On December 15, 2015, the undersigned judge found *Marentes III* to be related to *Marentes II*, and *Marentes III* was subsequently reassigned to the undersigned judge. ECF Nos. 10 & 11.

Given the fact that *Marentes I*, *Marentes II*, and *Marentes III* all involve the same parties and arise out of the same set of operative facts, the Court requested, at the initial case management conference, that the parties submit briefing on whether *Marentes III* should be dismissed pursuant to *Colorado River* abstention. ECF No. 18 at 1; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The parties submitted their respective briefs on March 17, 2016.

## II.  REQUEST FOR JUDICIAL NOTICE

State Farm requests judicial notice of the complaint in *Marentes I*. ECF No. 22. Marentes and Bichegkueva do not oppose this request, and the Court finds this document subject to judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding that "court filings and other matters of public record" are subject to judicial notice); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2011) ("[A] court may take judicial notice of

6
Case No. 15-CV-05616-LHK
ORDER REGARDING APPLICATION OF *COLORADO RIVER* ABSTENTION

matters [in the] public record.") (internal quotation marks omitted). Accordingly, State Farm's request for judicial notice is GRANTED.

### III. LEGAL STANDARD

Under the *Colorado River* abstention doctrine, a federal court may abstain from exercising jurisdiction in favor of parallel state proceedings where doing so would serve the interests of "'[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817 (citation omitted).

The Ninth Circuit has identified "eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011) (footnote omitted).

A stay of proceedings pursuant to *Colorado River* is appropriate only in "exceptional circumstances," *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002), and if there is "substantial doubt as to whether the state court proceedings will resolve" all issues before the federal court, a stay or dismissal on *Colorado River* grounds is "preclude[d]," *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).

### IV. DISCUSSION

Although the Ninth Circuit generally applies eight factors in determining whether *Colorado River* abstention should apply, the Court finds a comprehensive review of these factors unnecessary. To be sure, several factors weigh in favor of abstention. With respect to "whether federal law or state law provides the rule of decision on the merits," *R.R. St.*, 656 F.3d at 978, for instance, all of the causes of action in *Marentes III* are based on state law. There are no causes of action based on federal law. Similarly, with respect to "the desire to avoid forum shopping" and

"the inconvenience of the federal forum," *id.* at 978–79, this Court determined, in *Marentes II*, that "State Farm [did] appear to be forum shopping." 2015 WL 6955012, *6. State Farm's decision to remove *Marentes III* to federal court suggests that State Farm may once again be seeking a more favorable forum to litigate.

However, in spite of these factors, both parties oppose application of *Colorado River* abstention because both parties contend that the state court proceedings in *Marentes I* will not resolve all of the issues in the instant action. Pls. Br. at 5–6; Def. Br. at 7–9. "The Ninth Circuit has stated that a dispositive factor against stay or dismissal in the *Colorado River* analysis is the existence of a substantial doubt as to whether the state proceedings will resolve the federal action." *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1021 (N.D. Cal. 2008). Although "exact parallelism" is not required, the federal and state court actions must be "substantially similar" to one another. *R.R. St*, 656 F.3d at 982.

Here, although *Marentes I* and *Marentes III* do involve similar issues, there is substantial doubt as to whether all of the issues presented in *Marentes III* will be resolved by the state court in *Marentes I*. As the parties point out, *Marentes I* is primarily a personal injury action. At this point in *Marentes I*, liability is no longer at issue. The parties agree that Marentes is liable to Bichegkueva, and that Marentes assigned his rights against State Farm to Bichegkueva. The only remaining issue is the extent of Bichegkueva's damages, which will be addressed at the May 26, 2015 prove-up hearing in state court.

In contrast, the claims in *Marentes III* concern whether State Farm acted in bad faith in handling Marentes' request for a defense in *Marentes I*. According to Bichegkueva and Marentes, State Farm violated various provisions of the California Insurance Code in addressing Marentes' request. Moreover, State Farm's sole filing in *Marentes I*—its opposition to the motion to enforce the settlement agreement—did not assert any defenses as to Bichegkueva's claims against Marentes. Instead, this filing simply sought to challenge whether Marentes could, as a matter of Marentes' insurance coverage, assign Marentes' rights against State Farm to Bichegkueva. As further evidence of State Farm's alleged bad faith, Bichegkueva and Marentes point to State

1   Farm's decision to reserve the right to seek reimbursement from Marentes for defense costs
2   incurred in *Marentes I* and to pursue a declaratory relief action against Marentes.

3   These allegations of bad faith are not at issue in *Marentes I*. Moreover, given the advanced
4   stage of proceedings in *Marentes I*, it is unlikely that the state court will have an opportunity to
5   adjudicate these issues. As the Ninth Circuit has held, *Colorado River* abstention may be
6   exercised only "in situations involving the *contemporaneous* exercise of concurrent jurisdictions,
7   either by the federal courts or by state and federal courts." *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d
8   729, 734 (9th Cir. 1991). Thus, *Colorado River* abstention is inapplicable if "[t]here is no
9   concurrent state proceeding to which [a court] can defer." *Id.* In accordance with this principle,
10  this Court, in *Sepehry-Fard v. Bank of New York Mellon, N.A.*, 2013 WL 4030837, 4*–5* (N.D.
11  Cal. Aug. 5, 2013), declined to apply *Colorado River* abstention where the federal court action
12  asserted claims that were not at issue in the state court action. Consistent with *Kirkbride* and
13  *Sepehry-Fard*, the Court finds that there is substantial doubt as to whether the state court
14  proceedings in *Marentes I* will resolve all of the issues presented in *Marentes III*. Accordingly,
15  the Court DECLINES to dismiss the instant action on the basis of *Colorado River* abstention.

16  **V.   CONCLUSION**

17  For the foregoing reasons, the Court finds that *Colorado River* abstention does not apply to
18  the instant case.

19  **IT IS SO ORDERED.**

20  Dated: April 7, 2016

21  _____
22  LUCY H. KOH
    United States District Judge

9
Case No. 15-CV-05616-LHK
ORDER REGARDING APPLICATION OF *COLORADO RIVER* ABSTENTION