STEPHEN M. HAYES (SBN 83583)
STEPHEN P. ELLINGSON (SBN 136505)
JAMIE A. RADACK (SBN 221000)
HAYES SCOTT BONINO ELLINGSON & McLAY, LLP
203 Redwood Shores Parkway, Suite 480
Redwood City, California 94065
Telephone: 650.637.9100
Facsimile: 650.637.8071

Attorneys for Defendant
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VINCENT CASTILLO MARENTES, an individual; LIUDMILA BICHEGKUEVA, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation; and DOES 1 to 50, <br><br> Defendants. | CASE NO. 5:15-CV-05616-LHK <br><br> **DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT** <br><br> **Date:** September 29, 2016 <br> **Time:** 1:30 p.m. <br> **Crtrm:** 8, 4th Floor <br> **Judge:** Hon. Lucy H. Koh |

686294

# **TABLE OF CONTENTS**

I.    INTRODUCTION.................................................................................................... 2

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................ 4

      A.    The Automobile Accident ................................................................. 4

      B.    The Underlying Personal Injury Action ............................................ 4

      C.    Marentes Rejects State Farm's Offer to Defend Under a Reservation
            of Rights.......................................................................................... 5

      D.    Marente's Deposition in the Instant Lawsuit ................................... 6

      E.    Marentes's Personal State Farm Policy ........................................... 6

III.  SUMMARY JUDGMENT IS PROPER.................................................................. 9

IV.   THE APPLICABLE RULES OF INSURANCE POLICY
      INTERPRETATION MANDATE THAT SUMMARY JUDGMENT BE
      ENTERED FOR STATE FARM ......................................................................... 10

V.    STATE FARM HAD NO DUTY TO DEFEND OR INDEMNIFY
      MARENTES IN THE UNDERLYING ACTION ................................................ 12

      A.    The ET Tow Truck was not Covered Under the Policy's Grant of
            Coverage ......................................................................................... 13

      B.    The Policy Expressly Excludes Coverage for the ET Tow Truck ....... 14

VI.   PLAINTIFFS' BAD FAITH CLAIM FAILS AS A MATTER OF LAW ...................... 15

VII.  STATE FARM IS ENTITLED TO SUMMARY JUDGMENT OF
      PLAINTIFFS' FRAUD CLAIM AS A MATTER OF LAW........................................ 18

VIII. PLAINTIFFS' UNFAIR COMPETITION CLAIM FAILS AS A MATTER
      OF LAW............................................................................................................ 20

IX.   PLAINTIFFS' PUNITIVE DAMAGES CLAIMS FAIL AS A MATTER OF
      LAW................................................................................................................. 21

X.    CONCLUSION ................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AICCO Inc, v. Ins. Co. of N. Am.*
90 Cal.App.4th 579 (2001) ............................................................................................... 20

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 106 S.Ct. 2505 (1986) ............................................................................. 9, 10

*In Re Angela P.*
28 Cal.3d 908 (1981) ......................................................................................................... 22

*Austero v. National Casualty Co.*
84 Cal.App.3d 1 (1978) ..................................................................................................... 17

*Bardin v. Daimlerchrysler Corp.*
136 Cal.App.4th 1255 (2006) ....................................................................................... 20, 21

*Basich v. Allstate Ins. Co.*
87 Cal.App.4th 1112 (2001) ............................................................................................. 22

*Beck v. State Farm Mut. Auto. Ins. Co.*
54 Cal.App.3d 347 (1976) ................................................................................................. 22

*Belmonte v. Employers Ins. Co.*
83 Cal.App.4th 430 (2000) ............................................................................................... 11

*Bryant v. Adventist Health System/West*
289 F.3d 1162 (9th Cir. 2002) .......................................................................................... 10

*Buss v. Superior Court*
16 Cal. 4th 35 (1997) ........................................................................................................ 12

*Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*
175 Cal.App.3d 1 (1985) ................................................................................................... 15

*Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.*
(1994) 27 Cal.App.4th 33 .................................................................................................. 12

*Century Surety Co. v. Polisso*
139 Cal.App.4th 922 (2006) ......................................................................................... 15, 17

*Chateau Chamberay Homeowners Assn. v. Associated Int'l. Ins. Co.*
90 Cal.App.4th, 335, 346 (2001) ...................................................................................... 16

*Coll. Hosp., Inc. v. Super. Ct.*
8 Cal.4th 704 (1994) ......................................................................................................... 22

*Del Carmen Guadalupe v. Agosto*
  299 F.3d 15 (1st Cir. 2002) .................................................................................. 10

*Farmers Insurance Exch. v. Frederick*
  244 Cal.App.2d 776 (Cal. Ct. App. 1966) ........................................................... 14

*Freeman v. Allstate Life Ins. Co.*
  253 F.3d 533 (9th Cir. 2001).................................................................................. 10

*Gunderson v. Fire Ins. Exch.*
  37 Cal.App.4th 1106 (1995) .................................................................................. 11

*Halliburton Energy Servs., Inc. v. Dep't of Transp.*
  220 Cal. App. 4th 87 (2013) .................................................................................. 14

*Hardage v. CBS Broad. Inc.*
  427 F.3d 1177 (9th Cir. 2006)................................................................................ 10

*Hartford Cas. Ins. Co. v. Swift Dist., Inc.*
  59 Cal.4th 277 (2014) ................................................................................... 11, 12

*Hinesley v. Oakshade Town Ctr.*
  135 Cal.App.4th 289 (2005) .................................................................................. 18

*James River Ins. Co. v. Herbert Schenk, P.C.*
  523 F.3d 915 (9th Cir. 2008).................................................................................. 10

*Jones v. AIG Risk Mgmt., Inc.*
  726 F.Supp.2d 1049 (N.D.Cal. 2010) ................................................................... 18

*Klien v. Earth Elements*
  59 Cal.App.4th 965 (1997) .................................................................................... 20

*Kransco v. American Surplus Lines Ins. Co.*
  23 Cal.4th 390 (2000) ........................................................................................... 17

*Levine v. Blue Shield of Cal.*
  189 Cal.App.4th 1117 (2010) ................................................................................ 20

*Love v. Fire Ins. Exch.*
  221 Cal.App.3d 1136 (1990)................................................................................. 15

*Lunsford v. Am. Guarantee & Liab. Ins. Co.*
  18 F.3d 653 (9th Cir.1994).................................................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 (1986) .............................................................................................. 10

**STATE FARM'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – CASE NO. 5:15-CV-05616 - LHK**

*In re Mediscan Research, Ltd.*
   940 F.2d 558 (9th Cir. 1991)...............................................................................18

*Mock v. Millers Mut. Ins. Co.*
   4 Cal.App.4th 306 (1992) ...................................................................................22

*Nat'l Auto. & Cas. Ins. Co. v. Contreras*
   193 Cal.App.3d 831 (Cal. Ct. App. 1987) .........................................................14

*National Auto v. Stewart*
   (1990) 223 Cal.App.3d 452................................................................................11

*National Union Fire Ins. Co. v. Estate of Meyer*
   192 Cal.App.3d 866 (1987)................................................................................11

*Nelson v. Gaunt*
   (1981) 125 Cal.App.3d 623................................................................................18

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
   210 F.3d 1099 (9th Cir. 2000)............................................................................10

*Patrick v. Maryland Cas. Co.*
   217 Cal.App.3d 1566 (1990)..............................................................................22

*Rappaport-Scott v. Interinsurance Exch. of Auto Club*
   146 Cal.App.4th 831 (2007) ..............................................................................16

*Reader's Digest Ass'n v. Super. Ct.*
   37 Cal.3d 244 (1984) .........................................................................................22

*Richard P. v. Vista Del Mar Child Care Serv.*
   106 Cal.App.3d 860 (1980)................................................................................18

*Robinson Helicopter Co., Inc. v. Dana Corp.*
   34 Cal.4th 979 (2004) ..................................................................................18, 19

*Safeco Ins. Co. v. Gilstrap*
   141 Cal.App.3d 524 (1983)................................................................................11

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*
   72 Cal.App.4th 861 (1999) ................................................................................20

*State Farm Mut. Auto. Ins. Co. v. Davis*
   7 F.3d 180 (9th Cir. 1993)....................................................................................5

*State Farm Mut. Auto. Ins. Co. v. Johnston*
   9 Cal.3d 270 (1973) ...........................................................................................13

-iv-

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Assn.*
    809 F.2d 626 (9th Cir.1987) ................................................................. 9

*Transit Cas. Co. v. Giffin*
    41 Cal.App.3d 489 (1974) ..................................................................... 13

*Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co.*
    122 Cal.App.4th 949 (2004) .................................................................. 11

*Trishan Air, Inc. v. Federal Ins. Co.*
    635 F.3d 422 (2011) ............................................................................. 6

*Estate of Tucker v. Interscope Records*
    515 F.3d 1019 (9th Cir. 2008) .............................................................. 10

*Varig Airlines v. Walter Kidde & Co.*
    960 F.2d 1235 (9th Cir. 1982) .............................................................. 9

*Waller v. Truck Ins. Exch.*
    (1995) 11 Cal.4th 1 ......................................................................... 10, 11

*West v. State Farm & Cas. Co.*
    868 F.2d 348 (9th Cir. 1989) ................................................................ 10

*Westoil Terminals Co., Inc. v. Industrial Indem. Co.*
    110 Cal.App.4th 139 (2003) ................................................................. 11

*Wilson v. 21st Century Ins. Co.*
    42 Cal.4th 713, 68 Cal.Rptr.3d 746 (2007) .......................................... 16

**Statutes**

Cal. Civ.Code § 1636 ................................................................................ 11

Cal. Civ. Code § 3294 ......................................................................... 21, 23

Cal. Civ. Code § 3294(a) .......................................................................... 21

Cal.Veh.Code § 615 .................................................................................. 15

California Business and Professions Code § 17200 ................................ 3, 20

California's Unfair Competition Law. ........................................................ 2

Fed. R. Civ. Proc. 56 ............................................................................. 1, 9

Insurance Code section 11580.1 (c) (8) .................................................. 14

**STATE FARM'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – CASE NO. 5:15-CV-05616 - LHK**

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

NOTICE IS HEREBY GIVEN that at 1:30 p.m. on September 29, 2016[1], or as soon as the matter can be heard before District Judge Lucy H. Koh, defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), will move for summary judgment, or in the alternative, partial summary judgment, under Fed. R. Civ. Proc. 56 as follows:

State Farm is entitled to summary judgment on the grounds that the undisputed facts establish that the tow truck plaintiff Vincent Marentes was driving at the time of the underlying motor vehicle accident was not an insured vehicle under his State Farm automobile policy. Therefore, plaintiff cannot meet his burden to establish a right to policy benefits under his State Farm automobile policy.

In the alternative, State Farm is entitled to summary judgment on the separate and independent grounds that the undisputed facts establish that at the time of the accident, Marentes was operating the tow truck as part of a "Car Business," which triggered a dispositive exclusion in the policy.

Therefore, because there was no coverage under the State Farm automobile policy for either one of these two reasons, State Farm had no duty to defend or indemnify Marentes in the underlying personal injury action, titled *Bichegkueva v. Extreme Towing, Inc., et al.*, Santa Clara County Superior Court Case No. 114CV264168.[2] Since State Farm was not obligated to defend or indemnify Marentes, all four causes of action in plaintiffs' Complaint must fail as a matter of law.

Alternatively, even if State Farm did somehow breach its insurance contract with Marentes, State Farm is still entitled to partial summary judgment as to plaintiffs' bad faith cause of action on the grounds that State Farm handled the claim reasonably as a matter of law, particularly in light of the coverage issues and other circumstances at the time, which raised a genuine coverage dispute.

State Farm is also entitled to partial summary judgment of plaintiffs fraud cause of action on

---

[1] The Court provided State Farm with a September 22, 2016 hearing date, but Mr. Marentes' counsel was not available on that date.

[2] The *Bichegkueva v. Extreme Towing, Inc., et al.* action was originally venued in San Francisco County Superior Court and assigned Case No. CGC-13536083. The case was subsequently transferred to Santa Clara County Superior Court and assigned Case No. 114CV264168.

1   the grounds that plaintiffs have failed to provide any evidence that State Farm made an actionable

2   misrepresentation on which they reasonably relied to their detriment.

3   State Farm is further entitled to partial summary judgment on the grounds that plaintiffs

4   have failed to produce any evidence to establish that State Farm violated California's Unfair

5   Competition Law.

6   Finally, State Farm is entitled to partial summary judgment as to plaintiffs' punitive damage

7   claims.  Plaintiffs cannot produce any evidence that State Farm acted fraudulently, maliciously, or

8   oppressively to meet the clear and convincing standard of proof that is required to sustain a punitive

9   damage claim.

10   This motion will be based on this Notice of Motion, the Memorandum of Points and

11   Authorities, the declarations of Craig Jacobs and Stephen P. Ellingson, and evidence attached

12   thereto, all pleadings and papers filed herein, and any other matters as the Court deems appropriate.

13   ### MEMORANDUM OF POINTS AND AUTHORITIES

14   ### I.
15   ### INTRODUCTION

16   Plaintiff Vincent Marentes was involved in an automobile accident that injured plaintiff

17   Liedmila Bichegkueva.  Marentes was driving a tow truck owned by his employer, Extreme

18   Towing, Inc. ("ET"), in the course and scope of his employment.  Marentes' *personal* State Farm

19   automobile policy did not cover ET's tow truck, and also excluded coverage for an accident arising

20   out of a "car business" such as a towing company.  ET's tow truck was covered by ET's own policy

21   issued by another insurer.  That insurer defended ET and Marentes in Bichegkueva's underlying

22   personal injury action and paid Bichegkueva just under $1 million to settle her claim against ET.

23   Bichegkueva settled her claim against Marentes by taking an assignment of his alleged claims

24   against State Farm in exchange for a covenant not to execute on a default judgment, which

25   Marentes agreed not to contest.  Plaintiffs' claims against State Farm fail, however, because there

26   was no coverage under the clear and unambiguous language of the State Farm policy.

27   Marentes' personal State Farm automobile policy provided liability coverage for his 2003

28   Chevrolet Impala as the named insured vehicle.  The ET tow truck was not named as an insured

686294

vehicle in the policy.  It also did not fall within the policy's definition of "your car," or a "newly acquired car," "non-owned car," or "temporary substitute car" as those terms are defined in the State Farm policy.  The policy also specifically excluded coverage for the ET tow truck as a vehicle used in connection with the insured's employment in a "car business."

Since State Farm correctly denied Marentes' claim for coverage pursuant to the insurance contract, plaintiffs' bad faith claim also fails, as a matter of law.  Furthermore, State Farm's correct denial of Marentes' claim means that plaintiffs' fraud and unfair competition claims also must fail.  However, even if the Court somehow finds that State Farm did breach its insurance contract with Marentes, State Farm still is entitled to partial summary judgment as to plaintiffs' bad faith, fraud, and unfair competition causes of action.

State Farm's investigation of the claim and denial of coverage were objectively reasonable as a matter of law.  Far from consciously or deliberately depriving Marentes of the benefits of the insurance contract, State Farm denied coverage pursuant to what was at the very least a genuine dispute as to whether Marentes's claim was covered.  As such, plaintiffs cannot prevail on their bad faith cause of action.

Plaintiffs' fraud claim fails as a matter of law as well, because the alleged misrepresentations cannot sustain a fraud cause of action.  Plaintiffs first claim that State Farm promised to provide a defense to Marentes pursuant to the insurance contract without ever intending to do so.  However, the promises relied upon to prove that State Farm made misrepresentations are not sufficient for a finding of fraud as a matter of law.  Plaintiffs also claim that State Farm committed a misrepresentation in concealing the fact that State Farm only intended to provide Marentes coverage pursuant to a full reservation of rights.  Yet plaintiffs cannot dispute that  State Farm twice informed Marentes in writing that it would only defend Marentes pursuant to a full reservation of rights.

Plaintiffs' unfair competition claim also fails as a matter of law.  The undisputed facts show that State Farm's conduct was not unfair, unlawful, or fraudulent as those terms are defined pursuant to California Business and Professions Code § 17200.

Finally, plaintiffs' punitive damage claims also must fail as a matter of law.  Punitive

1  damages must be proven by clear and convincing evidence, and are disfavored by the law.  Plaintiffs
2  are unable to produce any evidence to show that State Farm acted with malice, oppression, or fraud
3  as they are required to do in order to prevail on a claim for punitive damages.

4       The undisputed evidence shows that there is no dispute as to any issue of material fact, and
5  plaintiffs are unable to produce any evidence to raise a triable issue of material fact.  As a result,
6  State Farm respectfully requests that this Court enter summary judgment, or at a minimum, partial
7  summary judgment ,in its favor.

8                                        **II.**
9                    **STATEMENT OF UNDISPUTED MATERIAL FACTS**

10  **A.    The Automobile Accident**

11       The underlying automobile accident occurred on June 16, 2013.  (Index of Exhibits in
12  Support of State Farm's Motion for Summary Judgment, or Partial Summary Judgment (Hereinafter
13  "Ex."), Ex.2, p. 12.)  At the time, Marentes was employed as a tow truck driver for ET.  (Ex. 1, p.
14  1.)  That day, Marentes was at home when he received a dispatch call to respond to a CHP request
15  to tow a vehicle.  (Ex. 17, pp. 119:4-120:1-15.)  Marentes left his home in the ET tow truck to
16  respond to the tow request.  (*Id.*)  Marentes kept the ET tow truck home as a matter of practice so
17  that he could respond to tow requests from home.  (*Id.*)  Marentes was on his way home from the
18  tow when the accident occurred.  (*Id.*)   He was driving the ET tow truck owned by ET.  (Ex. 2, p.
19  12.)  Marentes was traveling northbound on I-280 when he rear-ended Bichegkueva's vehicle.

20  **B.    The Underlying Personal Injury Action**

21       On December 12, 2013, Bichegkueva filed a personal injury suit against ET and Marentes
22  ("Underlying Action"). ET and Marentes were defended by Crusader Insurance Company pursuant
23  to ET's commercial towing policy.  (Ex. 1, p. 1)  In December 2014, Bichegkueva, ET, and
24  Marentes entered into a "Settlement Agreement, Release and Assignment with Covenant."  (Ex. 9.)
25  The Agreement settled all claims against ET, and Bichegkueva received $970,000 from Crusader on
26  behalf of ET.  (Ex. 9, p. 32.)  Bichegkueva settled her claim against Marentes by taking an
27  assignment of his alleged claims against State Farm in exchange for a covenant not to execute on a
28  default judgment, which Marentes agreed not to contest.  (Ex. 9, pp. 32-33.)  In exchange for the

686294                                        -4-

1   covenant not to execute, Bichegkueva took an assignment of Marentes' rights under his personal

2   State Farm Policy.[3]  (Ex. 9, p. 33-34.)

3   **C.     Marentes Rejects State Farm's Offer to Defend Under a Reservation of Rights**

4        Merentes did not tender the Underlying Action to his State Farm agent, because the accident

5   did not involve his personal vehicle. (Ex. 17, pp. 122:18-123:5.) Rather, Crusade's hired counsel

6   tendered the Underlying Action to State Farm on July 17, 2014, over a year after the accident. (Ex.

7   1, p1.) During its investigation, State Farm learned that Marentes' Impala was operational at the

8   time of the accident, and that he was acting within his scope of employment at the time of the

9   accident. (Exs. 3-5, pp. 24-26.) Thus, State Farm initially denied the tender of defense from

10  Marentes on September 23, 2014, because the ET tow truck was not an insured vehicle under the

11  Policy. (Ex. 6, p. 27.) State Farm later reiterated to Bichegkueva's counsel that there was no

12  coverage for the tow truck under Marentes' State Farm policy because it was not an "insured

13  vehicle." (Ex. 7, 28.)

14       In February 2015, Bichegkeva's counsel sent State Farm the Settlement Agreement, Release

15  and Covenant Not to Execute. (Ex. 8, p. 29.) On March 12, 2015, after receiving notice of

16  Marentes' agreement with Bichegkueva to allow the default to be entered against him, State Farm

17  agreed to defend Marentes under a full reservation of rights. (Exs. 10, p. 44.) In its letter, State

18  Farm was very clear that its offer to provide a defense would be subject to a reservation of rights,

19  stating: "[i]n response to your February 23, 2015 email, please be advised that State Farm will be

20  providing its insured, Vincent Marentes, a defense *under a full reservation of rights* … State Farm

21  *specifically reserves its right to assert defenses at any time*." (*Id.*)

22       State Farm reiterated its offer to defend Marentes pursuant to a reservation of rights on May

23  20, 2015. (Ex. 11, pp. 45-49.) State Farm explained that its reservation of rights included the right

24  to file a declaratory relief action to obtain the court's determination with respect to whether there

25  was a duty to defend or indemnify Marentes, as well as the right to seek reimbursement from

26  Marentes in the event that it was determined that his claim was not covered by his State Farm

---

27  [3] As the assignee of Marentes' claims against State Farm, Bichegkueva is subject to the same
    defenses Marentes would have been had he brought the claims himself. *State Farm Mut. Auto. Ins.*

28  *Co. v. Davis,* 7 F.3d 180, 183 (9th Cir. 1993) (applying Calif. law).

**STATE FARM'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL
SUMMARY JUDGMENT – CASE NO. 5:15-CV-05616 - LHK**

1    policy, as it is permitted to do under California law. (Ex. 11, p. 45.)

2       State Farm retained Kevin Cholakian of Cholakin & Associates to set aside the default

3    judgement Bichegkueva had obtained against Marentes, but Marentes had already stipulated to

4    allow the entry of default. (Ex. 12-13, pp. 50-55.) Marentes also specifically rejected State Farm's

5    offer to provide a defense pursuant to a reservation of rights:

6
7
8
> If the defense is offered subject to this right to reimbursement, the defense is hereby rejected, and defense counsel is directed to immediately cease ALL work on Mr. Marentes' behalf. (Ex. 14, pp. 56-58.)

9       Thus, although it had already appointed defense counsel to set aside the default, State Farm

10    obeyed Marentes's unequivocal command and did not provide a further defense for Marentes. On

11    April 13, 2016 the Court entered judgment against Marentes in the amount of $2,597,352. (Ex. 16.)

12    **D.**    **Marente's Deposition in the Instant Lawsuit**

13       Marentes appeared for his deposition on July 6, 2016. Marentes testified that the 2003

14    Chevrolet Impala, insured by State Farm, was his primary personal vehicle. (Ex. 17, pp. 106:17-

15    106: 19; 108:1-108:16.) He further testified that the Impala was operational at the time of the

16    accident. (Ex. 17, p.115:14-115:21.) On the date of the accident, Marentes was at home waiting to

17    be called for two job as was his general practice. (Ex. 17, pp. 119:4-120:20.) He received a call to

18    tow a vehicle following an accident. (*Id.*) He picked up the vehicle from the accident scene and

19    drove it to ET's tow yard. (*Id.*) He then started to go directly home when this accident occurred.

20    (*Id.*) Marentes confirmed that he never used the tow truck for personal use. (*Id.*) Marentes further

21    testified that he did not tender the personal injury action to his State Farm agent "because it – it

22    wasn't involving my cars, my personal cars." (Ex. 17, pp. 122:18-123:5.)

23    **E.**    **Marentes's Personal State Farm Policy**

24       The policy at-issue is State Farm Policy No. 089 6925-E25-05D, with a bodily injury limit

25    of $30,000 (the "Policy").[4] The Policy's Declarations Page identified Vincent Marentes as the

26

---

27
28
[4] Marentes also had State Farm Policies covering a motorcycle and pickup truck and a renter's policy. The Impala was his primary vehicle, and plaintiffs have limited the causes of action in the complaint to the policy covering the Impala. (Complaint, ¶ 3.) Since plaintiffs have not raised any claims for coverage under those policies in their complaint, they cannot raise them now in

named insured, and the 2003 Chevrolet Impala as the insured vehicle. (Ex. 15, p. 60.)

The Policy's Liability Coverage Insuring Agreement provided:

> 1. *We* will pay damages an *insured* becomes legally liable to pay because of:
> a. *bodily injury* to others; and
> b. damage to property
> caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.
>
> 2. *We* have the right to:
> . . .
>
> b. defend an *insured* in any claim or lawsuit with attorneys chosen by us;
>
> . . .
>
> for damages payable under this policy's Liability Coverage. (Ex. 15, p. 67.)

The Policy's Liability Coverage included the following additional definition of "Insured":

> 1. *you* and resident *relatives* for:
> a. the ownership, maintenance, or use of:
> (1) *your car*;
> (2) a *newly acquired car;* or
> (3) a *trailer*; and
> b. the maintenance or use of:
> (1) a *non-owned car*; or
> (2) a *temporary substitute car*;
>
> 2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse or *domestic partner* who resides with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse or *domestic partner* . . . . (*Id.*)

The Policy also included the following relevant definitions:

> *Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads.
>
> *Car* does not include:
>
> 1. Any vehicle while located for use as a dwelling or other premises; or

opposition to summary judgment. *Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422, 435 (2011) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings").

686294

2. A truck-tractor designed to pull any type of trailer.

***Car Business*** means a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicle or any type of trailer.

. . .

***Newly Acquired Car*** means a ***car*** newly ***owned by you*** . . .

***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

1. is ***owned by***:
    a. ***you***;
    b. any ***resident relative***;
    c. any other ***person*** who resides primarily in ***your*** household; or
    d. an employer of any ***person*** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:
    a. ***you***; or
    b. any ***resident relative***;

    during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or ***loss***.

. . .

***Owned By*** means:

    1. owned by;

    2. registered to; or

    3. Leased, if the lease is written for a period of 31 or more consecutive days, to.

. . .

***Temporary Substitute Car*** means a ***car*** that is in the lawful possession of the ***person*** operating it and that:

    1. replaces ***your car*** for a short time while ***your car*** is out of use due to its:
        a. breakdown;
        b. repair;
        c. servicing;
        d. damage; or
        e. theft; and

    2. neither ***you*** nor the ***person*** operating it own or have registered.

686294

-8-

**STATE FARM'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT – CASE NO. 5:15-CV-05616 - LHK**

*Trailer* means:

    1. a trailer:
        a. designed to be pulled by a ***private passenger car***;
        b. not designed to carry persons; and
        c. while not used as premises for office, store, or display purposes; or

    2. a farm implement or farm wagon while being pulled on public roads by a car.

. . .

***Your Car*** means the vehicle shown under "YOUR CAR" on the Declarations Page. ***Your car*** does not include a vehicle that you no longer own or lease. (Ex. 15, pp. 65-66.)

The Policy also contained the following exclusion:

**Exclusions**
THERE IS NO COVERAGE FOR AN ***INSURED***:

. . .

7.   WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT ***INSURED'S*** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A ***CAR BUSINESS.***  This exclusion does not apply to:
    a. ***you***;
    b. any ***resident relative***; or
    c. any agent, employee, or business partner of a. or b. above

while maintaining or using ***your car***, a ***newly acquired car***, a ***temporary substitute car***, or a ***trailer owned by you***; (Ex. 15, Index pp. 68-69.)

### III.
### SUMMARY JUDGMENT IS PROPER

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56; *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249, 106 S.Ct. 2505 (1986).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson, supra*, 477 at 248.  "[A] party cannot manufacture a genuine issue of material fact merely by making allegations

686294

-9-

STATE FARM'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT – CASE NO. 5:15-CV-05616 - LHK

in its legal memoranda." *Varig Airlines v. Walter Kidde & Co.*, 960 F.2d 1235 (9th Cir. 1982). Where the non-moving party has the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008).

If the moving party meets its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading" but must produce evidence that "sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002); see *Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1167 (9th Cir. 2002). A "motion for summary judgment may not be defeated . . . by evidence that is "merely colorable" or "is not significantly probative." *Anderson, supra*, 249-50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

California's substantive insurance law governs this diversity case. *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). California and federal courts have held that an insurer's reasonableness may be decided as a matter of law when only one conclusion about the conduct's reasonableness is possible. *West v. State Farm & Cas. Co.*, 868 F.2d 348, 350-1 (9th Cir. 1989).

## IV.
## THE APPLICABLE RULES OF INSURANCE POLICY INTERPRETATION MANDATE THAT SUMMARY JUDGMENT BE ENTERED FOR STATE FARM

The California Supreme Court has specifically held that an insured has the burden to prove a claim falls within the basic scope of coverage. *Waller v. Truck Ins. Exch.* (1995) 11 Cal.4th 1, 16 ("[T]he burden is on the insured to bring the claim within the basic scope of coverage.") Whether

an insurance policy provides coverage for a claim is a question of law to be decided by the court. *Waller, supra*, at 18.  A court must first examine the coverage provisions to determine whether the plaintiff has met his initial burden to establish the claim falls within the ambit of insurance.  *Id*.  If there is no potential for liability under the basic scope of coverage, the court must not give a strained construction to impose liability the insurer has not assumed.  *National Auto v. Stewart*, (1990) 223 Cal.App.3d 452, 462.

The mutual intention of the parties at the time the contract is formed governs. Civ.Code §1636; *Hartford Cas. Ins. Co. v. Swift Dist., Inc.*, 59 Cal.4th 277, 288 (2014).  In determining this intent, "[t]he rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id*.  We consider the "'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage.'" *Id*.  The court must also interpret the applicable policy language in context, "with regard to its intended function in the policy." *Id*.

An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected.  *National Union Fire Ins. Co. v. Estate of Meyer*, 192 Cal.App.3d 866, 872 (1987).  "Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer, strict construction does not mean strained construction.  We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Safeco Ins. Co. v. Gilstrap*, 141 Cal.App.3d 524, 532-533 (1983).  Courts consistently uphold limitations on coverage that do not run afoul of public policy. *National Auto v. Stewart*, (1990) 223 Cal.App.3d 452, 461.

Policy exclusions will be enforced so long as they are sufficiently "conspicuous, plain and clear." *Travelers Cas. & Sur. Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949, 958 (2004).  It is well settled that an exclusion will preclude coverage if it is explicit and unambiguous. *Gunderson v. Fire Ins. Exch.*, 37 Cal.App.4th 1106, 1114 (1995); *Westoil Terminals Co., Inc. v. Industrial Indem. Co.*, 110 Cal.App.4th 139, 146 (2003); *Belmonte v. Employers Ins. Co.*, 83 Cal.App.4th 430, 435 (2000).

1    Whether an insurer owes its insured a duty to defend depends on a comparison between the

2    allegations of the complaint and the terms of the policy, as well as extrinsic facts known to the

3    insurer. *Swift, supra,* at p. 287. It is well settled that an insurer does not have a duty to defend

4    claims that do not potentially fall within the ambit of coverage provided by the policy. *Buss v.*

5    *Superior Court,* 16 Cal. 4th 35, 46 (1997). Further, where an insurer does defend claims against its

6    insured under a reservation of its rights, and those claims are later found not potentially covered

7    under the policy, the insurer is entitled to seek reimbursement of the fees and costs incurred in

8    providing that defense. *Id.* at p. 50. The right to reimbursement is intended to prevent the insured

9    from obtaining benefits under the policy for which it has neither bargained, nor paid a premium. *Id.*

10   at pp. 50-51. An insurance company "is an insurer, not a guardian angel." (*Camelot by the Bay*

11   *Condominium Owners' Assn. v. Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 35.)

12       The Policy here covered Marentes' personal vehicle, the 2003 Impala. The Policy's grant of

13   coverage did not cover ET's tow truck. Moreover, the Policy specifically excluded coverage for an

14   accident arising during the course and scope of Marentes' employment as a tow truck driver. The

15   Complaint in the Underlying Action indicates that Marentes was driving the ET tow truck at the

16   time of the accident. Plaintiffs have proffered no extrinsic evidence whatsoever that would bring

17   the ET tow truck within the coverage grant or avoid the "Car Business" exclusion of the State Farm

18   Policy. Because plaintiffs have failed to establish a right to coverage under the Policy, State Farm

19   did not owe Marentes a duty to defend or indemnify and plaintiffs' claims fail.[5]

**V.**

20   **STATE FARM HAD NO DUTY TO DEFEND OR INDEMNIFY MARENTES IN THE**

21   **UNDERLYING ACTION**

22       There are two separate and independent grounds on which this Court may determine that

23   State Farm did not have a duty to defend Marentes: (1) the ET tow truck was not an insured vehicle

24   under the Policy; and/or (2) coverage was excluded under the "Car Business" exclusion because

25   Marentes was returning from a tow job at the time of the accident. Either of these grounds is

26   sufficient in and of itself to support summary judgment for State Farm.

27   [5] Because the duty to defend is broader than the duty to indemnify, a finding that State Farm did not
     owe Marentes a duty to defend would necessarily result in a finding that State Farm did not have a

28   duty to indemnify. *Swift, supra,* at p. 287.

-12-

A.      **The ET Tow Truck was not Covered Under the Policy's Grant of Coverage**

Plaintiffs cannot meet their burden to establish that the Policy's grant of coverage applied to the ET tow truck.  Coverage under the Policy is limited to bodily injury "caused by an accident that involves a vehicle for which [the] *insured* is provided Liability Coverage by this policy."  The Policy provided coverage for "your car," a "newly acquired car," a "trailer," a "non-owned car," or a "temporary substitute car."  The ET tow truck involved in the June 16, 2013 accident does not fall within any of these definitions.  Thus, it is not a vehicle for which Marentes is provided Liability Coverage under the Policy.

Specifically, the Policy defines "*Newly Acquired Car*" as "a *car* newly *owned by you* . . . ."  Since the ET tow truck was not owned by Marentes, it does not qualify for coverage as a "newly acquired car."

"*Non-Owned Car*" is defined by the Policy as "a *car* that is in the lawful possession of *you*… and that neither: 1. is *owned by*: a. *you*; . . . or d. an employer of [*you*] . . . ."  Marentes' employer ET owned the ET tow truck.  (Ex. 1, p. 1.)  Therefore, the ET tow truck did not qualify for coverage as a "non-owned car."

In the Policy, "*Temporary Substitute Car*" is defined as "a *car* that is in the lawful possession of the *person* operating it and that: [¶] 1. replaces *your car* for a short time while *your car* is out of use . . . ."  "Temporary Substitute Car" has been defined by the courts to mean that the insured vehicle is: (1) withdrawn from use because of breakdown, repair, servicing, loss, or damage; and (2) has been withdrawn from its normal use.  *Transit Cas. Co. v. Giffin*, 41 Cal.App.3d 489, 493 (1974).  "Normal use" means that the same use of the substitute vehicle will be made as the one originally insured.  *State Farm Mut. Auto. Ins. Co. v. Johnston*, 9 Cal.3d 270, 275 (1973).  Marentes' Impala was not out of use at the time of the accident.  Nor did the ET tow truck replace Marentes' Impala.  Thus, the ET tow truck did not qualify for coverage as a "temporary substitute car." [6]

"*Your Car*" is defined by the Policy as "the vehicle shown under 'YOUR CAR' on the Declarations Page."  The Declarations Page lists the 2003 Chevrolet Impala as "YOUR CAR."  The ET tow truck was not listed on the Policy's Declarations Page.  As such, it does not qualify for

---

[6] Nor does the tow truck qualify as a "Trailer," as defined by the Policy.

-13-

1 | coverage as "your car."

2 |     As explained above, the insured has the burden to establish that his claim comes within the

3 | basic scope of coverage. Plaintiffs have not proffered any evidence to show that the ET tow truck

4 | was an insured vehicle that would trigger coverage under the Policy.  Indeed, plaintiffs are incapable

5 | of producing any such evidence as it is clear from the plain language of the Policy that the ET tow

6 | truck was not covered under the Policy's grant of coverage.  Rather, the plain language of the Policy

7 | establishes that State Farm never contemplated, nor received a premium for providing coverage for

8 | the ET tow truck owned by ET.  Thus, State Farm did not breach its insurance contract in denying

9 | coverage to Marentes, and is entitled to summary judgment of plaintiffs' claims as a matter of law.

10 | **B.**    **The Policy Expressly Excludes Coverage for the ET Tow Truck**

11 |     State Farm is entitled to summary judgment on the separate grounds that the ET tow truck

12 | was specifically excluded from coverage pursuant to the terms of the Policy.  Insurance Code

13 | section 11580.1 (c) (8) permits an automobile policy to restrict coverage for any motor vehicle or

14 | class of motor vehicles, as described or designated in the policy.  Case law has also upheld such

15 | restrictions in automobile policies.  *See, e.g.*, *Farmers Insurance Exch. v. Frederick,* 244

16 | Cal.App.2d 776, 784-85 (Cal. Ct. App. 1966) (holding no coverage for utility vehicles including a

17 | one-half ton pickup); *Nat'l Auto. & Cas. Ins. Co. v. Contreras*, 193 Cal.App.3d 831 (Cal. Ct. App.

18 | 1987) (holding no coverage for small pickup truck when coverage for non-owned automobiles was

19 | limited private passenger automobile.)

20 |     Further, where an employer receives some incidental benefit from its employee's use of its

21 | vehicle to or from work, the employee's commute is considered to be within the course and scope of

22 | employment.  *Halliburton Energy Servs., Inc. v. Dep't of Transp.*, 220 Cal. App. 4th 87, 97 (2013).

23 |     Exclusion 7 of the Policy specifically and unambiguously precludes coverage for a loss

24 | arising out of Marentes' use of the ET tow truck.  Exclusion 7 precludes coverage for an insured

25 | while using a vehicle in connection with the insured's employment or engagement of any kind in a

26 | "car business."  The Policy defines "***Car Business***" as "a business or job where the purpose is to

27 | sell, repair, service, ***deliver***, test, road-test, ***park***, or ***store land motor vehicle*** or any type of trailer."

28 |     California law defines "tow truck" as "a motor vehicle which has been altered or designed

-14-

1  and equipped for, and primarily used in the business of, transporting vehicles…or is otherwise

2  primarily used to render assistance to other vehicles….A trailer for hire that is being used to

3  transport a vehicle is a tow truck." Cal.Veh.Code § 615.

4      At the time of the accident, Marentes was returning from a tow job, i.e. he delivered a

5  vehicle to ET, where he parked it for storage.  Plaintiffs cannot dispute that Marentes was engaged

6  in a business where the purpose was to *deliver*, *park* or *store a land motor vehicle* on behalf of ET

7  at the time of the accident.  Indeed, those are the functions of a tow truck driver.  Even if the ET tow

8  truck did somehow qualify as an insured vehicle under the Policy, coverage for the accident is

9  unambiguously excluded.  Since coverage is excluded, State Farm cannot be held liable for breach

10  of the insurance contract failing to defend or indemnify Marentes in the Underlying Action as a

11  matter of law.

12
### VI.
### PLAINTIFFS' BAD FAITH CLAIM FAILS AS A MATTER OF LAW
13

14      As a threshold matter, absent coverage under the insurance policy, plaintiffs' bad faith claim

15  fails as a matter of law.  *See Love v. Fire Ins. Exch.* 221 Cal.App.3d 1136, 1148-1149 (1990).  Since

16  plaintiffs' breach of contract cause of action fails on the grounds that there was no coverage under

17  the Policy, their bad faith claim also fails as a matter of law.

18      Yet even if the Court somehow finds that there is coverage, the undisputed facts establish

19  that State Farm handled the claim reasonably as a matter of law.  An insurer only breaches the

20  implied covenant of good faith when it withholds policy benefits unreasonably or without proper

21  cause.  *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 54 (1985).  The *California*

22  *Shoppers* court explained, "declining to perform a contractual duty under the policy *with proper*

23  *cause* is not a breach of the implied covenant." *Id.*  (emphasis in original.)

24      To hold an insurer liable for breach of the implied covenant, there must be proof that the

25  insurer *consciously* and *deliberately* deprived the insured of policy benefits.  *Century Surety Co. v.*

26  *Polisso*, 139 Cal.App.4th 922, 949 (2006).  As the *Polisso* court explained:

27              [t]here must be proof the insurer failed or refused to discharge its
               contractual duties not because of an honest mistake, bad judgment, or
28              negligence, "but rather *by a conscious and deliberate act*, which unfairly

1   frustrates the agreed common purposes and disappoints the reasonable
    expectations of the other party thereby depriving that party of the benefits
2   of the agreement." *Century Surety Co*, 139 Cal.App.4th at 950 (emphasis
    added) (quoting *Chateau Chamberay Homeowners Assn. v. Associated*
3   *Int'l. Ins. Co.*, 90 Cal.App.4th, 335, 346 (2001).)

4   A court can conclude *as a matter of law* that the denial of a claim was not unreasonable

5   under the circumstances of the case. *Rappaport-Scott v. Interinsurance Exch. of Auto Club*, 146

6   Cal.App.4th 831 (2007); *see also*, *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th

7   Cir.1994). "While the reasonableness of an insurer's claims-handling conduct is ordinarily a

8   question of fact, it becomes a question of law where the evidence is undisputed and only one

9   reasonable inference can be drawn from the evidence." *Chateau Chamberay*, 90 Cal.App.4th at 346.

10  In particular, "as long as there is no dispute as to the underlying facts, it is for the court, not a jury,

11  to decide whether the insurer had 'proper cause.'" *Id.* at p. 350.

12  Where there is a "genuine dispute" as to the insurer's duty to pay policy benefits, the

13  insurer does not breach the implied covenant by withholding benefits:

14      It is now settled law in California that an insurer denying or delaying the
        payment of policy benefits due to the existence of a genuine dispute with
15      its insured as to the existence of coverage liability or the amount of the
        insured's coverage claim is not liable in bad faith even though it might be
16      liable for breach of contract." *Chateau Chamberay*, 90 Cal.App.4th at 350.

17  Significantly, if there is a genuine issue as to the insurer's liability, a court can conclude *as*

18  *a matter of law* that the denial of the claim was not unreasonable. *Rappaport-Scott*, 146 Cal.App.4th

19  831; *see also*, *Lunsford*, 18 F.3d at 656. This principle was ratified by the California Supreme

20  Court in *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 721, 68 Cal.Rptr.3d 746 (2007):

21      The genuine issue rule in the context of bad faith claims allows a [trial]
        court to grant summary judgment when it is undisputed or indisputable
22      that the basis for the insurer's denial of benefits was reasonable – for
        example, where even under the plaintiff's version of the facts there is a
23      genuine issue as to the insurer's liability under California law.

24  Where an insurer's reasonable investigation gives rise to a genuine dispute over the insurer's

25  liability, summary judgment for the insurer is appropriate. *Id.* Thus, the *Wilson* Court reinforced

26  the reasonable dispute doctrine as a defense to a bad faith claim, although the *Wilson* Court

27

28

1    ultimately concluded that it did not apply to the facts before it. [7]

2        A court must evaluate the insurer's conduct based on the circumstances as they unfolded,

3    not in hindsight: "In evaluating the evidence to see if there was any unreasonable conduct by the

4    Company, it is essential that no hindsight test be applied.  The reasonable or unreasonable action by

5    the Company must be measured as of the time it was confronted with a factual situation to which it

6    was called upon to respond." *Austero v. National Casualty Co.*, 84 Cal.App.3d 1, 32 (1978);

7    *Century Surety Co. v. Polisso, supra* at 949.  Also, the court will consider the willingness of an

8    insurer to reevaluate a claim and continue its investigation as evidence of the insurer's

9    reasonableness.  *Austero v. National Casualty Co.*, *supra* 84 Cal.App.3d at 35.

10       Conduct of the insureds and their representatives can also negate a bad faith claim.  Delay,

11   obfuscation, unreasonable demands and other misconduct by the insured or the insured's agents,

12   whether intentional or not, can establish that the insurer acted reasonably under the circumstances.

13   *Kransco v. American Surplus Lines Ins. Co.,* 23 Cal.4th 390, 408, 410-411 (2000).

14       Application of these principles to the undisputed facts of this case establishes that State

15   Farm is entitled to summary judgment of plaintiffs' bad faith claim as a matter of law.  First, since

16   there was no coverage for the Underlying Action filed by Bichegkueva, State Farm cannot be held

17   liable for bad faith as a matter of law.

18       Second, even if there was somehow coverage for the Underlying Action filed against

19   Marentes, there is no evidence even suggesting that State Farm consciously and deliberately

20   deprived Marentes of policy benefits.  Rather, the undisputed facts of this case establish that, once

21   the defense was tendered, State Farm contacted Marentes to determine whether the ET tow truck

22   might somehow qualify for coverage under the Policy.  Upon contacting Marentes, State Farm

23   determined that the ET tow truck did not qualify for coverage under any definition of the Policy.  In

24   addition, State Farm learned that Marentes was working for ET as a tow truck driver at the time of

25   the accident, which meant that the claim was excluded.  Thus, State Farm conducted a diligent

26

27   [7] In *Wilson*, the Court determined that it was unreasonable for the claim representative to deny
     plaintiff's claim for injuries on the grounds that they were unrelated to the accident and were
28   preexisting without relying on a single medical report or opinion, particularly because the insured's
     treating physician specifically concluded that her injuries were related to the accident. *Id.* at 721.

1    investigation and concluded that ET's tow truck was not covered under the Policy.  The ET tow

2    truck did not qualify as an insured vehicle under any of the relevant definitions in the Policy, and in

3    fact was even expressly excluded from coverage as a vehicle being used in connection with the

4    insured's employment in a car business.  Therefore, it was reasonable to deny coverage. At an

5    absolute minimum, the coverage issues in this case presented a genuine dispute as to whether the

6    ET tow truck was covered under the Policy.

7         Moreover, once State Farm learned that Marentes had agreed to allow a default judgment to

8    be entered against him, it reopened the file and agreed to provide a defense under a reservation of

9    rights in an attempt to protect him from the default judgment.  Yet Marentes rejected State Farm's

10   offer to provide him with a defense pursuant to a reservation and demanded that State Farm

11   withdraw its defense.  State Farm was entitled under California law to reserve its rights under the

12   policy, including its right to seek a declaration of no coverage and reimbursement of fees and costs

13   for non-covered claims.  Marentes, however, sought to preclude State Farm from exercising those

14   rights, and precluded State Farm from providing him with a defense.

15        Under these circumstances, State Farm's handling of Marentes's claim was reasonable as a

16   matter of law and plaintiffs' bad faith cause of action must fail.

17                                              **VII.**
     **STATE FARM IS ENTITLED TO SUMMARY JUDGMENT OF PLAINTIFFS' FRAUD**
18                          **CLAIM AS A MATTER OF LAW**

19        To prevail on a cause of action for fraud, the party asserting the claim must establish: (1) a

20   misrepresentation; (2) knowledge of the falsity; (3) intent to induce reliance; (4) justifiable reliance;

21   and (5) resulting damage.  *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 635; *Hinesley v. Oakshade*

22   *Town Ctr.* 135 Cal.App.4th 289, 294 (2005).  A misrepresentation must ordinarily be a false

23   representation of fact in order to be actionable.  *Richard P. v. Vista Del Mar Child Care Serv.* 106

24   Cal.App.3d 860, 865 (1980).  Likewise, to be liable for fraud based on concealment, the party must

25   have concealed a material fact.  *In re Mediscan Research, Ltd.* 940 F.2d 558, 563 (9th Cir. 1991).

26        Where the alleged misrepresentation is based on an intent not to perform a contractual

27   promise, the plaintiff must show something more than mere nonperformance.  *Jones v. AIG Risk*

28   *Mgmt., Inc.* 726 F.Supp.2d 1049, 1058 (N.D.Cal. 2010) (citing *Tenzer v. Superscope, Inc.* 39 Cal.3d

1   18, 30 (1985).)  To establish a claim for fraud, or any tort, relative to a breach of contract, the

2   plaintiff must show that the defendant committed fraudulent conduct independent of the contract.

3   *Robinson Helicopter Co., Inc. v. Dana Corp.* 34 Cal.4[th] 979, 988 (2004).  Even if the breach was

4   intentional, the plaintiff can only recover damages for fraud if the conduct goes "above and beyond

5   a broken contractual promise." *Id.*

6          The gravamen of plaintiffs' fraud claim is two-fold.  Plaintiffs first allege that State Farm

7   promised to provide Marentes with a defense in the Underlying Action, but never intended to do so,

8   and in fact did not provide an adequate defense.  Second, plaintiffs allege that State Farm

9   fraudulently concealed the fact that any defense provided to Marentes would be provided under a

10  reservation of rights.  Plaintiffs, however, cannot establish that State Farm knowingly made any

11  material misrepresentation of fact, or that plaintiffs justifiably relied on any such purported

12  misrepresentation under the circumstances of this case.

13         Again, as a threshold matter, there was no coverage for Marentes's claim pursuant to the

14  Policy, so there could not possibly be any misrepresentation that State Farm would provide a

15  defense.  Nor could there be any reasonable reliance on any such assertion.

16         Further, plaintiffs' first alleged misrepresentation that State Farm promised it would defend

17  the Underlying Action without intending to do so is belied by the undisputed facts.  State Farm

18  promised to defend Marentes at least two different times.  First State Farm promised in the

19  insurance contract to defend Marentes for covered accidents.  However, Plaintiffs' fraud claim as to

20  this promise is simply an allegation of intent not to perform a contractual promise on the part of

21  State Farm.  As noted above, there can be no misrepresentation based on the mere signing of an

22  insurance contract.  In order to sustain a cause of action for fraud, plaintiffs must allege more than

23  mere nonperformance, or even intentional nonperformance.  Plaintiffs have not, and cannot produce

24  any evidence that State Farm committed any fraudulent conduct independent of the contract.

25         Second, State Farm later promised, on March 12, 2015 and May 20, 2015, to defend

26  Marentes pursuant to a standard reservation of rights.  However, it is undisputed that Marentes

27  rejected this representation, and specifically instructed State Farm to cease all work on Marentes's

28  behalf.  State Farm's promise that it would defend Marentes pursuant to a reservation of rights was

true, and cannot be the basis for a fraudulent misrepresentation.  The only reason that State Farm did not end up providing a defense to Marentes pursuant to a reservation of rights was Marentes's own conduct in declining State Farm's offer.

Plaintiffs' second alleged misrepresentation – that State Farm concealed the fact that it was providing a defense under a reservation of rights – is also directly contradicted by the indisputable evidence.  State Farm informed plaintiffs in writing of its intent to defend Marentes pursuant to a Reservation of Rights on March 12, 2015, and again on May 20, 2015.  Indeed, in State Farm specifically reserved "its right to assert defenses at any time."  State Farm also specifically reserved its rights to seek declaratory relief and the right to seek reimbursement if it was determined that Marentes was not entitled to a defense pursuant to the Policy.  Plaintiffs cannot credibly argue that State Farm concealed the fact that it was reserving these and other rights under the Policy.

Plaintiffs cannot provide any evidence of a misrepresentation made by State Farm.  Consequently, plaintiffs are also unable to show any justified reliance on a misrepresentation or any resulting damage.  As such, plaintiffs' fraud claim must fail as a matter of law.

## VIII.
## PLAINTIFFS' UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW

Plaintiffs are also unable to produce any evidence that State Farm violated California Business and Professions Code § 17200.  As a result, plaintiffs' unfair competition claim also must fail as a matter of law.  To state a claim for violation of the Unfair Competition Law ("UCL"), a plaintiff must show that the defendant committed a business act that is either, fraudulent, unfair, or unlawful.  Bus.&Prof.Code §17200; *Levine v. Blue Shield of Cal.*, 189 Cal.App.4th 1117, 1136 (2010).  "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices that are *unlawful*, *unfair*, or *fraudulent*."  *AICCO Inc, v. Ins. Co. of N. Am.* 90 Cal.App.4th 579, 587 (2001) (emphasis added.) Two of these varieties have been defined, "[a]n *unlawful* business practice or act is an act or practice, committed pursuant to business activity that is at the same time forbidden by law."  *Klien v. Earth Elements* 59 Cal.App.4th 965, 969 (1997) (emphasis added.)  A *fraudulent* business practice "as used in the statute, does not refer to the common law tort of fraud but only requires a showing

1    members of the public are likely to be deceived." *South Bay Chevrolet v. Gen. Motors Acceptance*

2    *Corp.,* 72 Cal.App.4[th] 861, 888 (1999) (emphasis added).

3         California law as to what constitutes an *unfair* business practice in consumer cases,

4    however, is somewhat unsettled. *Bardin v. Daimlerchrysler Corp.* 136 Cal.App.4[th] 1255, 1260

5    (2006).  The *Bardin* Court recognized that "[t]here are two lines of appellate opinions addressing

6    the definition of 'unfair' within the meaning of the UCL in consumer actions.  One line defines

7    'unfair' as prohibiting conduct that is immoral, unethical, oppressive, unscrupulous or substantially

8    injurious to consumers and requires the court to weigh the utility of the defendant's conduct against

9    the gravity of the harm to the alleged victim." *Id.*, citing *Smith v. State Farm Mutual Auto. Ins. Co.*

10   93 Cal.App.4[th] 700, 718-719 (2001).  The second line of cases holds that the "public policy which is

11   a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be

12   tethered to specific constitutional, statutory, or regulatory provisions." *Id.*, at 1260-1261, citing

13   *Scripps Clinic v. Super. Ct.* 108 Cal.App.4[th] 917 (2003).

14        Plaintiffs' UCL claim does not meet the requirements to show unlawful or fraudulent

15   conduct, nor does it meet ether standard defining "unfair" conduct.  The undisputed facts establish

16   that Marentes was not entitled to benefits under the Policy, and State Farm properly denied his

17   claim.  Moreover, even if the Court were to find that State Farm did breach the insurance contract,

18   State Farm's conduct does not give rise to an unfair business practice as defined by either line of

19   cases.  State Farm did not violate any laws, did not engage in any deceptive or sharp practices, and

20   its conduct was objectively reasonable.  Nor did State Farm engage in any conduct with intent to

21   harm anyone, and it did nothing that would be likely to deceive the public.  Accordingly, State

22   Farm's conduct was not a violation of the UCL, because it did nothing unlawful, unfair, or

23   fraudulent.  State Farm is thus entitled to summary judgment on plaintiffs' UCL claim.

24                                               IX.
               **PLAINTIFFS' PUNITIVE DAMAGES CLAIMS FAIL AS A MATTER OF LAW**
25

26        A claim for punitive damages requires plaintiffs to prove by ***clear and convincing evidence***

27   that State Farm was guilty of malice, fraud, or oppression. Cal. Civ. Code § 3294(a) (emphasis

28

686294                                            -21-

added.)[8] "Clear and convincing evidence" consists of evidence "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." *In Re Angela P.* 28 Cal.3d 908, 919 (1981). "The law does not favor punitive damages and they should be granted with the greatest caution." *Beck v. State Farm Mut. Auto. Ins. Co.* 54 Cal.App.3d 347, 355 (1976).

In ruling on a motion for summary judgment of a claim for punitive damages, the court must evaluate whether the evidence submitted by the opposition constitutes ***clear and convincing evidence*** of malice, fraud, or oppression pursuant to the higher burden of proof for such a claim. *Reader's Digest Ass'n v. Super. Ct.,* 37 Cal.3d 244, 252 (1984); *Basich v. Allstate Ins. Co.,* 87 Cal.App.4th 1112, 1118-1119 (2001). Indeed, where the plaintiff fails to submit clear and convincing evidence of malice, fraud, or oppression, the court must summarily adjudicate the punitive damages claim in the defendant's favor, ***even if the court concludes there is a triable issue of fact on the bad faith claim.*** *Basich,* 87 Cal.App.4th at 1118-1122.

In a bad faith action, evidence that the insurer has violated its duty of good faith and fair dealing does not alone establish that it acted with the requisite intent to justify an award of punitive damages. *Patrick v. Maryland Cas. Co.,* 217 Cal.App.3d 1566, 1575 (1990). To establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by ***clear and convincing evidence*** that the insurer acted maliciously, oppressively or fraudulently. *Mock v. Millers Mut. Ins. Co.,* 4 Cal.App.4th 306, 328 (1992). These requirements are intended to increase the burden to recover punitive damages. *Coll. Hosp., Inc. v. Super. Ct.,* 8 Cal.4th 704, 712-13 (1994).

There is no evidence, let alone clear and convincing evidence, to raise a triable issue of material fact supporting plaintiffs' punitive damages claim. State Farm was correct in its coverage determination. Extreme Towing's tow truck did not qualify for coverage under any of the Policy's

---

[8] Civil Code section 3294 defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or ***despicable conduct*** which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." "Oppression" means "***despicable conduct*** that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Fraud means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

1  definitions of an insured vehicle.  And even if it did, coverage was expressly excluded because the

2  tow truck was being used in connection with the insured's employment in a car business at the time

3  of loss.  At the very least, even if the Court were to rule that State Farm breached its insurance

4  contract with Marentes, State Farm's actions were reasonable in light of the genuine dispute that

5  existed as to whether Marentes's tow truck was covered under the Policy.  Furthermore, as

6  explained above, State Farm's conduct was not fraudulent in any way, and State Farm certainly did

7  not engage in conduct rising to the level of malice or oppression as those terms are defined by Civil

8  Code section 3294.  As a result, plaintiffs' punitive damages claims must fail as a matter of law.

9
## X.
### CONCLUSION
10

11      State Farm is entitled to summary judgment.  The ET tow truck involved in the accident was

12  not an insured vehicle under the Policy, and thus State Farm could not have breached the contract,

13  nor acted in bad faith, committed fraud, or engaged in unfair competition.  Alternatively, even if the

14  ET tow truck were covered, State Farm's conduct was objectively reasonable, and did not rise to the

15  level of bad faith, fraud, or unfair competition.  Based on the foregoing, State Farm respectfully

16  requests the Court enter judgment in its favor and against plaintiffs herein on all causes of action.

17  Alternatively, if the Court finds that the ET tow truck was covered under the Policy, then Sate Farm

18  requests that the Court enter partial summary in its favor as to the bad faith, fraud, and unfair

19  competition causes of action in addition to plaintiffs' punitive damages claims.

20  Dated: July 8, 2016                 HAYES SCOTT BONINO ELLINGSON & MCLAY, LLP

21

22                          By: _____

23                               STEPHEN M. HAYES
                                 STEPHEN P. ELLINGSON
24                               JAMIE A. RADACK
                                 Attorneys for Defendant
25                               STATE FARM MUTUAL AUTOMOBILE
                                 INSURANCE COMPANY
26

27

28