UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

VINCENT CASTILLO MARENTES, et al.,

Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant.

Case No. 15-CV-05616-LHK

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 39

Vincent Marentes and Liudmila Bichegkueva (collectively "Plaintiffs") bring the instant

suit against State Farm Mutual Automobile Insurance Company ("Defendant"). Before the Court

is Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

ECF No. 39 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in

this case, the Court GRANTS Defendant's Motion for Summary Judgment. The Court DENIES

Plaintiffs' Motion for Partial Summary Judgment, ECF No. 67, and Defendant's Administrative

Motion to File a Sur-Reply, ECF No. 71, as moot.

I.      **BACKGROUND**

        A.      **Factual Background**

                1.      *Marentes I*

        On June 16, 2013, Bichegkueva suffered severe injuries as the result of her vehicle being

United States District Court
Northern District of California

rear ended by a tow truck driven by Marentes.  ECF No. 40-1; ECF No. 40-2 ("Police Report");

ECF No. 48-33 ("Default Judgment Mot.").  The tow truck belonged to Extreme Towing,

Marentes' employer, and Marentes was driving it home after completing a tow job for Extreme

Towing.  ECF No. 40-1; Police Report at 13.  On December 12, 2013, Bichegkueva filed a

personal injury action against Marentes and Extreme Towing for injuries arising out of the June

16, 2013 incident.  ECF No. 48-14, Declaration of Kevin Cholakian ("Cholakian Decl.") ¶ 2–3.

The case was originally filed in San Francisco County Superior Court before being transferred to

Santa Clara County Superior Court.  *Id.*  All proceedings in the action shall be referred to as

*Marentes I.*

### 2.        Coverage Decision Under Marentes' Insurance Policy

Marentes had a State Farm car insurance policy at the time of the accident covering his

primary vehicle.  ECF No. 40-15 ("State Farm Policy").  After the accident and in the first seven

months of the case brought by Bichegkueva against Marentes and his employer, Marentes did not

tender the accident to Defendant.  ECF No. 40-17, August 6, 2016 Deposition of Vincent

Marentes ("Marentes Deposition") pp. 26–27.  When asked why Marentes did not tender the

accident in a deposition, he responded, "Because it—it wasn't involving my cars, my personal

cars."  *Id.*  On July 17, 2014, Robert Aaron ("Aaron") of Aaron & Wilson LLP, the attorneys hired

by Extreme Towing's insurance company to defend Marentes and Extreme Towing, tendered the

"defense and indemnity of the case to State Farm."  ECF No. 40-1.  On July 28, 2014, Defendant

requested that Aaron provide the police report, which Aaron sent the next day.  *See* Police Report

at 1.

Marentes' State Farm Policy in place at the time of the accident covered a 2003 Chevrolet

Impala.  State Farm Policy at 2.  The policy provided insurance coverage of Marentes's use of "(1)

your car; (2) a newly acquired car; or (3) a trailer; and . . . the maintenance or use of (1) a non-

owned car; or (2) a temporary substitute car."  *Id.* at 10.  The policy defines a non-owned car to

include "a car that is in the lawful possession of you or any resident relative and that neither:

1. is owned by:

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

a. *you*;
b. any *resident relative*;
c. any other *person* who resides primarily in *your* household; or
d. an employer of any *person* described in a., b., or c. above . . . ."

*Id.* at 8.

The policy also excludes coverage "while maintaining or using a vehicle in connection with that insured's employment in or engagement of any kind in a *car business*." *Id.* at 7. The policy provides an exception to this exclusion if the policy-holder is driving a car owned by the insured. *Id.* at 11–12. The policy defines a car business to be "a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer." *Id.* at 8.

### 3.     Demands on State Farm & Plaintiffs' Settlement Agreement

On August 4, 2014, Defendant informed Marentes that Defendant was investigating the accident and stated that Defendant reserved the right to assert all available policy defenses. ECF No. 40-4. On September 8, 2014, Defendant sent a letter to Aaron stating that it was State Farm's understanding that Marentes was within the scope of his employment at the time of the accident. ECF No. 40-5. Purportedly, this understanding would exclude the accident because Marentes' job delivering and parking non-functioning cars with a tow truck caused the use of the tow truck to be "in connection with" a car business. *See* State Farm Policy at 8, 11–12.

In the September 8, 2014 letter, Defendant requested that Aaron respond to Defendant within seven days if its understanding that the accident occurred within Marentes' scope of employment was incorrect. ECF No. 40-5. After Aaron failed to respond, on September 23, 2014, Defendant sent a letter to Marentes care of Aaron & Wilson LLP denying coverage for the accident. ECF No. 40-6. However, rather than relying on Marentes' scope of employment and the car business exception, Defendant denied coverage because the car was owned by Marentes' employer, which is explicitly excluded from the definition of a non-owned car under the policy. *Id.*; State Farm Policy at 8.

On December 30, 2014, Marentes and Bichegkueva entered into a settlement agreement in *Marentes I*. ECF No. 40-9. Under the Settlement Agreement, Marentes agreed to "stipulate to

3

vacating the Answer filed on his behalf in the Subject Action and allow a default to be entered against him in the Subject Action" and that, at a subsequent "prove-up hearing for a judicial determination of total damages[,] . . . Marentes w[ould] not contest the damages requested and/or the Judgment ultimately entered against him." *Id.* at 3. Additionally, Marentes agreed to "assign[] and transfer[] to [Bichegkueva] any and all claims and causes of action Marentes may now have or hereafter acquire against State Farm arising out of State Farm's denial of Marentes' tender as set forth above, except any claim for emotional distress or punitive damages." *Id.* at 4–5. In return, Bichegkueva agreed "not to execute or otherwise seek to enforce or collect upon the Judgment." *Id.* at 4.

With respect to the default judgment provision, the agreement was premised on Bichegkueva's attorney's "final determination . . . that there are sufficient grounds for Marentes to proceed with a civil action for bad faith against [Defendant] by reason of [Defendant's] refusal to provide Marentes with a defense and/or indemnity in the Subject Action." *Id.* at 3. If Bichegkueva's attorney determined there were insufficient grounds to bring such an action, Bichegkueva agreed to dismiss the case against Marentes with prejudice. *Id.* at 3–4.

### 4.    State Farm Agrees to Defend Marentes

On February 23, 2015, Bichegkueva's attorney forwarded the settlement agreement to Defendant by email and stated that he was "giving [Defendant] this last opportunity to defend Mr. Marentes." ECF No. 48-10 Ex. A. Bichegkueva's attorney stated that he would "give [Defendant] until March 13, 2015, to notify Mr. Marentes' current attorney, Robert Aaron, and me [Bichegkueva's attorney] whether [Defendant] will defend Mr. Marentes." *Id.* Otherwise, if Defendant "refuse[d] to provide a defense to Mr. Marentes, then the Plaintiff w[ould] proceed forward and have a default and judgment entered against him." *Id.*

On March 12, 2015, counsel for Defendant, Stephen M. Hayes of Hayes Scott Bonino Ellingson & McLay, LLP ("the Hayes firm"), sent a letter to Bichegkueva's attorney stating that "[Defendant] will be providing its insured, Vincent Marentes, a defense under a full reservation of rights in relation to the above-referenced matter." ECF No. 40-10 ("Def. March 12, 2015 Letter").

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    Defendant's attorney specified that "[Defendant] is in the process of identifying defense counsel,

2    who will contact Mr. Marentes shortly. [Defendant] will also be issuing a full reservation of rights

3    to Mr. Marentes." *Id.* Finally, Defendant's attorney stated that Defendant did not "intend, by this

4    letter, to waive any rights under the policy or any policy defense. [Defendant] specifically

5    reserves its right to assert defenses at any time." *Id.* Although the letter was addressed to

6    Bichegkueva's counsel, the letter was also sent directly to Aaron & Wilson, LLP and Marentes.

7    *Id.* at 2; ECF No. 46 ("Marentes Decl.") ¶ 6.

8         Defendant did not immediately contact Marentes and did not challenge the terms of the

9    settlement agreement. ECF No. 48-1, Decl. of Jon-Marc Dobrin ("Dobrin Decl.") ¶ 3. On April

10   22, 2015, forty-one days later, Bichegkueva's attorney filed a motion to enforce the settlement

11   agreement in *Marentes I*. *Id.* Rather than oppose the motion, Aaron complied with the terms of

12   the settlement agreement by filing a Stipulation and Order Striking Marentes' Answer and

13   entering Marentes' default. *Id.* A hearing for the motion was set for May 19, 2015. ECF No. 48-

14   20, Deposition of Kevin Cholakian ("Cholakian Depo.") p. 41, ln.16.

15        State Farm then appointed Kevin Cholakian ("Cholakian") and his firm, Cholakian &

16   Associates, to represent Marentes. ECF No. 40-11 ("Def. May 20, 2015 Letter") at 5. On May

17   12, 2015, Aaron allowed Cholakian to associate as defense counsel in *Marentes I*. On May 15,

18   2015, Cholakian filed an untimely response to the motion to enforce the settlement agreement

19   between Bichegkueva and Marentes. ECF No. 48-13. In the opposition, Cholakian argued that

20   the settlement cannot be enforced because (1) Marentes' State Farm Policy does not allow an

21   assignment of rights, a necessary part of the settlement agreement, and (2) although the settlement

22   agreement specified that State Farm had not defended Marentes, Cholakian had now associated as

23   counsel to defend Marentes. *Id.* Simultaneously, counsel for State Farm filed an opposition to the

24   motion to enforce settlement as "the real party in interest" that made the same argument as

25   Cholakian that the settlement agreement was void because it violated the assignment provision of

26   the State Farm Policy. ECF No. 48-10.

27        At the May 19, 2015 hearing, Superior Court Judge Joseph Huber, the presiding judge in

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*Marentes I*, refused to hear Cholakian's and State Farm's arguments.  ECF No. 48-28.  Judge Huber had already signed the order enforcing the settlement agreement and stated that that there wasn't anything that he could do.  *Id.* at 3–4.  Judge Huber, however, invited the parties to file a motion for reconsideration of the stipulation and order or a motion to set aside default if they wanted to do so.  *Id.*  Neither Cholakian nor State Farm filed a motion for reconsideration or a motion to set aside entry of default.

### 5. Disagreement Between Marentes and State Farm

On May 20, 2015, counsel for State Farm sent a letter to Marentes stating that Marentes' defense was occurring pursuant to a full reservation of rights, including the right to obtain reimbursement of attorney's fees and "to file a declaratory relief action to obtain the court's determination with respect to whether there is a duty to defend or indemnify [Marentes] from the claim."  Def. May 20, 2015 Letter at 1.  The letter then described the terms of the State Farm Policy that excluded Marentes from coverage.  *Id.* at 2–5.

On May 22, 2015, Cholakian gave notice to Bichegkueva's counsel that he was going to seek to set aside the entry of default.  ECF No. 40-12.  Bichegkueva's counsel opposed Cholakian's course of action and claimed that Cholakian had a conflict of interest.  ECF No. 40-13.  First, Bichegkueva's counsel argued that the assignment-clause violation argument Cholakian made before Judge Huber created a conflict.  *Id.*  Second, Bichegkueva's counsel argued that because Bichegkueva was now an assignee of Marentes' rights, Cholakian also had to take her interests into account.  *Id.*

On May 26, 2015, Cholakian reached out to Marentes for the first time by phone. Marentes Decl. ¶ 8.  A few days later, on May 28, 2015, Cholakian met Marentes at Marentes' apartment.  There, Cholakian told Marentes that Cholakian had been hired to "protect" Marentes against the entry of a judgment against him and that (1) the assignment provision in the settlement with Bichegkueva had violated the State Farm policy, and (2) that "[Cholakian] did not believe that State Farm was obligated to pay any judgment that [Bichegkueva] might obtain against [Marentes]."  *Id.*

6

United States District Court
Northern District of California

The same day, on May 28, 2015, Aaron emailed all counsel involved in the case and stated that "Mr. Marentes does NOT accept State Farms [sic] defense in the Bichegkueva lawsuit subject to State Farm's right to reimbursement of all costs and attorneys' fees incurred in the defense.  If the defense is offered subject to this right to reimbursement, the defense is hereby rejected, and defense counsel is directed to immediately cease ALL work on Mr. Marentes' behalf."  ECF No. 40-14.

### 6. *Marentes II*

On May 21, 2015, simultaneously with the above correspondence, State Farm filed a declaratory relief action against Bichegkueva and Marentes in the Northern District of California seeking a declaration that Marentes was not covered by the State Farm Policy.  ECF No. 48-8.  On May 27, 2015, the case was reassigned to the undersigned judge and assigned Case Number 5:15-CV-02289-LHK.  N.D. Cal. Case No. 15-CV-02289-LHK, ECF No. 9.  Proceedings in this action shall be referred to as *Marentes II*.  *Marentes II* is distinct from the instant suit, which is assigned Case Number 5:15-CV-05616-LHK.  Defendant filed *Marentes II* in federal court despite the previous invitation from Judge Huber, the judge presiding over *Marentes I* in state court, to file a motion for reconsideration in that case.

On June 3, 2015, Marentes received the complaint for *Marentes II*, which Marentes understood as seeking defense fees.  Marentes Decl. ¶ 11.  The same day, Marentes called Cholakian and complained about State Farm seeking fees against him.  *Id.*  Whether the cause was the May 28, 2015 email or the June 3, 2015 phone complaint from Marentes personally, Cholakian sent an email on June 3, 2015 to Marentes informing Marentes that State Farm would not seek fees.  *Id.*; ECF No. 48-30.  Plaintiffs have not presented evidence that Marentes accepted Defendant's representation after that email.

On July 20, 2015, in *Marentes II*, Bichegkueva filed a motion to dismiss, N.D. Cal. Case No. 5:15-CV-02289-LHK, ECF No. 16, and on July 21, 2015, Marentes filed a motion to dismiss, *id.* ECF No. 20.  On August 3, 2015, Defendant filed an opposition.  *Id.* ECF No. 23.  On August 10, 2015, Marentes and Bichegkueva filed replies.  *Id.* ECF No. 30 ("Marentes Reply"); *id.* ECF

7

United States District Court
Northern District of California

No. 31 ("Bichegkueva Reply").

On August 26, 2015, also in *Marentes II*, Defendant filed a motion for summary judgment. *Id.* ECF No. 32.  On September 9, 2015, Marentes and Bichegkueva filed a joint opposition to Defendant's motion for summary judgment.  *Id.* ECF No. 39.  On September 16, 2015, Defendant filed a reply.  *Id.* ECF No. 40.

On November 10, 2015, this Court granted Bichegkueva's and Marentes' motions to dismiss under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942).  *See id.* ECF No. 46; *State Farm Mutual Auto. Ins. Co. v. Marentes*, 2015 WL 6955012 (N.D. Cal. Nov. 10, 2015).  Under *Brillhart*, "a federal district court sitting in diversity and presiding over an action for declaratory relief may decide to dismiss the federal court action if, as in this case, another suit is pending in state court, between the same parties, and presenting the same issues of state law."  *Marentes*, 2015 WL 6955012 at *3.  This Court denied Defendant's motion for summary judgment as moot.  *Id.* at *1.  This Court ordered the Clerk to close the case file.  *Id.* at *8.

On December 14, 2015, Bichegkueva filed a motion to relate *Marentes II* to the instant suit.  N.D. Cal. Case No. 15-CV-02289-LHK, ECF No. 47.  On the same day, Judge Richard Seeborg, who was originally assigned the instant suit, issued a Referral for Related Case Determination.  *Id.* ECF No. 48.  On December 15, 2015, this Court related *Marentes II* to the instant suit.  ECF No. 11.

### 7.  State Farm's Disassociation of Counsel and Judgment in *Marentes I*

On July 13, 2015, Cholakian disassociated as counsel from *Marentes I*.  ECF No. 48-31. The same day, Marentes received a letter from Cholakian informing Marentes that Cholakian would no longer be Marentes' lawyer.  Marentes Decl. ¶ 12.  Despite Aaron's email stating that Marentes would not accept representation from State Farm if attorney's fees were sought, Marentes states that he did not "reject" State Farm's defense.  *Id.* ¶ 10–11; ECF No. 48-35 at 2.

On March 28, 2016, in *Marentes I*, after a prove-up hearing where Bichegkueva presented the extent of her damages, judgment was entered against Marentes in the amount of $2,597,352.30

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    plus the cost of the suit.  ECF No. 48-33; ECF No. 48-34.  Marentes, pursuant to the requirements

2    of the settlement agreement, did not challenge the amount of damages sought by Bichegkueva in

3    the prove-up hearing.

4            **B.        Procedural History of the Instant Suit, *Marentes III***

5            On November 12, 2015, Plaintiffs filed the instant suit in state court.  ECF No. 1 ("Notice

6    of Removal") Ex. 1 at 6.  On December 9, 2015, State Farm removed the suit to federal court

7    pursuant to diversity jurisdiction.  Notice of Removal at 1–5.  Proceedings in this action shall be

8    referred to as *Marentes III*.  In *Marentes III*, Plaintiffs allege (1) breach of contract, (2) breach of

9    the implied covenant of good faith and fair dealing, (3) promissory fraud and fraudulent

10   concealment, and (4) breach of California's Unfair Competition Law ("UCL").  *Id.* Ex. 1 at 6.

11           On April 7, 2016, the Court issued an Order Regarding Application of *Colorado River*

12   Abstention.  ECF No. 27.  The Court held that abstention under *Colorado River Water*

13   *Conservation Dist. v. United States*, 424 U.S. 800 (1976), was inappropriate because both parties

14   opposed its application, the issues before the state and federal courts did not fully overlap, and the

15   state court proceedings had advanced too far to be capable of resolving the issues in the instant

16   suit.  ECF No. 27 at 8–9; ECF No. 48-34 (judgment entered against Marentes on March 28, 2016).

17           On August 8, 2016, Defendant filed the instant Motion for Summary Judgment on all of

18   Plaintiffs' claims.  ECF No. 39.  On August 22, 2016, Marentes and Bichegkueva filed separate

19   responses to Defendant's motion.  ECF No. 45 ("Marentes Resp."); ECF No. 48 ("Bichegkueva

20   Resp.").  On August 29, 2016, Defendant replied.  ECF No. 50 ("Reply").

21           On September 29, 2016, Plaintiffs filed a Motion for Partial Summary Judgment on

22   Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair

23   dealing.  ECF No. 71.  On October 13, 2016, Defendant responded, ECF No. 68, and on October

24   20, 2016, Plaintiffs replied, ECF No. 69.  On October 21, 2016, Defendants filed an

25   Administrative Motion to File a Sur-Reply, ECF No. 71, and on October 25, 2016, Plaintiffs filed

26   an opposition, ECF No. 74.

27   **II.      LEGAL STANDARD**

28
Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.     Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  However, on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

10

forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

### B.   State Law in Diversity Cases

"In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court."  *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).  If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict "how the state high court would resolve it."  *Id.*; *AirSea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks omitted).  In the absence of clear authority, the Court looks for guidance from decisions of the state appellate courts and other persuasive authorities, such as decisions from courts in other jurisdictions and treatises.  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir. 1996).  "In assessing how a state's highest court would resolve a state law question[,] . . . federal courts look to existing state law without predicting potential changes in that law."  *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).

## III.   DISCUSSION

Defendant seeks summary judgment on Plaintiffs' claims for (1) breach of contract, (2) the implied covenant of good faith and fair dealing, (3) promissory fraud and fraudulent concealment, and (4) violation of the UCL.  Additionally, Defendant seeks summary judgment on Plaintiffs' prayer for punitive damages.  Plaintiffs oppose the motion with respect to the breach of contract and implied covenant of good faith and fair dealing claim and also requests that the motion for summary judgment be denied under Federal Rule of Civil Procedure 56(d).  Both parties raise various evidentiary objections.  The Court first discusses the motion for summary judgment with respect to each claim, then addresses the request under Rule 56(d), and finally addresses the Parties' evidentiary objections.

### A.   Breach of Contract

Plaintiffs' claim for breach of contract involves allegations that Defendant breached its duty to defend and indemnify Marentes.  *See* Bichegkueva Resp. at 10–22.  Under California law,

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

"[a] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity" under the policy. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("*Montrose I*") (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)). The duty to defend is broader than the duty to indemnify and, thus, "an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." *Id.* (citing *Horace*, 4 Cal. 4th at 1081).

While the duty to defend is broad, it "is not unlimited." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995). In determining whether there is a duty to defend, courts must look to the complaint in the underlying litigation and "all facts known to the insurer from any source." *Montrose I*, 6 Cal. 4th at 300. The ultimate question is whether the facts known to the insurer at the time it refused to defend the underlying lawsuit created the potential for coverage under the policy. *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) ("[T]he issues here are what facts respondent knew at the time appellants tendered the defense of the Ferrando lawsuit, both from the allegations on the face of the third party complaint, and from extrinsic information available to it at the time; and whether these *known facts* created a potential for coverage under the terms of the Policy").

If there was no potential for coverage under the insurance policy based on the underlying complaint and extrinsic facts made known to the insurer, then the insurer has not breached the insurance contract by refusing to defend. *Montrose I*, 6 Cal. 4th at 295 (holding that duty to defend ends when it is apparent there is "no potential for coverage"). "The insured has the burden of showing that there was an 'occurrence'" covered by the policy. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998).

In interpreting an insurance policy, the Court first looks to the language of the policy itself. "Where no dispute surrounds material facts, interpretation of an insurance policy presents solely a question of law." *Jauregui v. Mid-Century Ins. Co.*, 1 Cal. App. 4th 1544, 1548 (1991). The "clear and explicit meaning" of the provisions "interpreted in their ordinary and popular sense . . . controls judicial interpretation unless [the disputed terms are] used by the parties in a technical

United States District Court
Northern District of California

sense, or unless a special meaning is given to them by usage." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 666 (1995) ("*Montrose II*").

Additionally, "any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) (internal quotation marks and citations omitted).  California courts do not apply coverage limitations if the insured has an objectively reasonable expectation of coverage under the policy, and the limitation on that reasonably expected coverage is either (1) not conspicuous, or (2) not plain and clear.  *Travelers Prop. Cas. Co. of Am. v. Superior Court*, 215 Cal. App. 4th 561, 578 (2013) ("*Travelers*").  The insurer has the burden of showing that a limitation on coverage reasonably expected under the policy is conspicuous, plain, and clear.  *Haynes*, 32 Cal. 4th at 1204 ("The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (citations omitted)).

The Court first identifies the relevant contractual language.  Second, the Court discusses whether the tow truck was a covered vehicle under the State Farm Policy and whether an exclusion in the policy, specifically the "car business" exclusion applies.  Third, the Court addresses whether any limitations on coverage are "conspicuous, plain, and clear."  Fourth, the Court discusses whether, despite a lack of coverage under the policy, there was a potential for coverage under the policy that triggered the duty to defend.  Finally, the Court addresses Plaintiffs' arguments that, notwithstanding a lack of coverage in the policy, Defendant has waived or is estopped from asserting coverage defenses.

### 1.      The Contractual Language

The State Farm Policy at issue here begins with a declarations page specifying the insured as Vincent Marentes and listing the covered car as Marentes' 2003 Chevrolet Impala.  State Farm Policy at 3.  The declarations page also states that the policy includes the provisions of an attached policy booklet, which specifies the substantive terms of the State Farm Policy.  *Id.* at 5.

Under the "**LIABILITY COVERAGE**" section of the policy booklet, the State Farm Policy provides an "Insuring Agreement," which states that "***We*** will pay damages an ***insured***

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

becomes legally liable to pay because of: [a] *bodily **injury*** to others; and [b] damage to property caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy."  State Farm Policy at 10 (bold and italics in original).  On the same page, the State Farm Policy defines an "***Insured***" to be:

> 1. *you* and ***resident relatives*** for:
>> a. the ownership, maintenance, or use of:
>>> (1) ***your car***;
>>> (2) a ***newly acquired car***;
>>> (3) a ***trailer***; and
>> b. the maintenance or use of:
>>> (1) a ***non-owned car***; or
>>> (2) a ***temporary substitute car***;

*Id.* at 10 (bold and italics in original).

The section prior to the Liability Coverage section provides definitions to each of the terms written in bold and italics under the definition of who is the "insured."  The Definitions section, after a preamble, organizes the terms in alphabetical order:

### DEFINITIONS

***We*** define certain words and phrases below for use throughout the policy.  Each coverage includes additional definitions only for use with that coverage.  These definitions apply to the singular, plural, possessive, and any other form of these words and phrases.  Defined words and phrases are printed in boldface italics.

. . . .

***Car Business*** means a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer.

. . . .

***Newly Acquired Car*** means a ***car*** newly ***owned by you***.  A ***car*** ceases to be a ***newly acquired car*** on the earlier of:

1.  the effective date and time of a policy, including any binder, issued by ***us*** or any other company that describes the ***car*** as an insured vehicle; or

2.  the end of the 14th calendar day immediately following the date the ***car*** is delivered to ***you***.

. . . .

***Non-Owned Car*** means a car that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1.      is *owned by*:
   a.      *you*;
   b.      any *resident relative*;
   c.      any other *person* who resides primarily in *your* household; or
   d.      an employer of any *person* described in a., b., or c. above; nor
2.      has been operated by, rented by, or in the possession of:
   a.      *you*; or
   b.      any *resident relative*

during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

. . . .

*Temporary Substitute Car* means a car that is in the lawful possession of the *person* operating it and that:
1.      replaces *your car* for a short time while *your car* is out of use due to its:
   a.      breakdown;
   b.      repair;
   c.      servicing;
   d.      damage; or
   e.      theft; and
2.      neither *you* nor the *person* operating it own or have registered.

. . . .

*Trailer* means:
1.      a trailer:
   a.      designed to be pulled by a *private passenger car*;
   b.      not designed to carry *persons*; and
   c.      while not used as premises for office, store, or display purposes; or
2. a farm implement or farm wagon while being pulled on public roads by a *car*.

. . . .

*Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

*Id.* at 8–9 (bold and italics in original).

The Liability Coverage section also contains a number of exclusions eliminating coverage

under the policy, one of which is the car business exclusion:

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

. . . .

7.      WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION

15

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

*Id.* at 11–12 (bold and italics in original). As written above, the Definitions section of the State Farm Policy defines a *Car Business* to mean "a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer." *Id.* at 8 (bold and italics in original).

### 2.    Analysis of Coverage Under the State Farm Policy

Defendant argues that Marentes' accident with Bichegkueva was excluded from coverage because (1) the tow truck was not a covered vehicle, and (2) the car business exclusion excluded the accident from coverage. Mot. at 12–15. If Defendant prevails on *either* ground, the State Farm Policy does not cover Marentes and Bichegkueva's accident. The Court first addresses whether the car business exclusion applies and then addresses whether the tow truck was a covered vehicle under the State Farm Policy.

### i.    Car Business Exclusion

Defendant argues that the car business exclusion excludes the accident between Marentes and Bichegkueva from coverage under the State Farm Policy. *Id.*. Under the car business exclusion, the State Farm Policy excludes coverage while the insured is "maintaining or using a vehicle in connection with that insured's employment in or engagement of any kind in a car business." State Farm Policy at 10. The definition of a car business is a "business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer." *Id.* at 8.

Plaintiffs do not argue that the car business exclusion is inapplicable to the accident at issue here. The undisputed facts show that the underlying accident occurred when Marentes rear-ended Bichegkueva while driving a tow truck. ECF No. 40-1; Police Report at 13. Plaintiffs do not dispute that Extreme Towing owned the tow truck, that the tow truck was covered by Extreme

16

1    Towing's insurance, or that Marentes was driving home from a tow job for Extreme Towing at the

2    time of the accident. ECF No. 40-1; Police Report at 13.  In fact, Plaintiffs make no argument that

3    the accident was outside the scope of Marentes' employment with Extreme Towing.  Bichegkueva

4    Resp. at 3–4.  Moreover, Plaintiffs do not challenge the fact that Extreme Towing

5    "deliver[s] . . .[and] park[s]" cars, which makes it a car business under the State Farm Policy.

6    State Farm Policy at 8.  Accordingly, the Court finds that Marentes was using the tow truck "in

7    connection with that insured's employment in or engagement of any kind in a car business."  *Id.* at

8    10.  Thus, because the car business exclusion excluded the accident from coverage, the State Farm

9    Policy does not cover Marentes' accident with Bichegkueva.

10                    **ii.      Whether the Tow Truck Was a Covered Vehicle**

11           Defendant also argues that the tow truck is not a covered vehicle under the policy.  Mot. at

12   12–15.  The State Farm Policy provides coverage for five categories of vehicles: "(1) your car; (2)

13   a newly acquired car; (3) a trailer; . . . [4] a non-owned car; or [5] a temporary substitute car."

14   State Farm Policy at 10.  The Court addresses each in turn.

15           First, "your car" is defined as the "vehicle shown under "YOUR CAR" on the Declarations

16   Page," which in this case is Marentes' 2003 Chevrolet Impala.  *Id.* at 3.  Here, the tow truck was

17   not Marentes' 2003 Chevrolet Impala, the car listed on the State Farm Policy's Declarations Page.

18           Second, a "newly-acquired car" is defined as a car "newly owned by you."  *Id.* at 8.  Here,

19   Extreme Towing owned the tow truck, not Marentes.  ECF No. 40-1.

20           Third, "trailer" is defined as a trailer "designed to be pulled by a private passenger car."

21   *Id.* at 9.  Here, the tow truck was not a trailer.

22           Fourth, a "non-owned car" is defined as a car in the insured's lawful possession that is

23   neither owned by "[a] you; [b] any resident relative; [c] any other person who resides primarily in

24   your household; or [d] an employer of any person described in a., b., or c. above."  *Id.* at 8.  As

25   mentioned above, the tow truck was owned by Extreme Towing, Marentes' employer.  ECF No.

26   40-1.  Therefore, the tow truck is not covered because it is a car owned by "an employer of

27   [Marentes]."  State Farm Policy at 8.

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Finally, a "temporary substitute car" is a car that replaces "your car," the 2003 Chevrolet Impala, while "your car" is "out of use due to its" breakdown, repair, servicing, damage, or theft. *Id.* at 8.  The record contains no evidence that Marentes' 2003 Chevrolet Impala was "out of use" when the accident occurred.  In fact, Marentes admits that it was not out of use.  Marentes Deposition at 17.

Accordingly, the tow truck does not fall into any of the five categories of covered vehicles and thus Marentes' accident was not covered under the terms of the State Farm Policy.

The Court next turns to whether limitations on coverage present in the car business exclusion and in the definitions of covered vehicles are "conspicuous, plain, and clear." *Haynes*, 32 Cal. 4th at 1204.

### 3.   Requirement that Exclusions Be Conspicuous, Plain, and Clear

As noted above, "any provision that takes away or limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Haynes*, 32 Cal. 4th at 1204 (internal quotation marks and citation omitted).  California courts do not apply coverage limitations if the insured has an objectively reasonable expectation of coverage under the policy, and the limitation on that reasonably expected coverage is either (1) not conspicuous, or (2) not plain and clear. *Travelers*, 215 Cal. App. 4th at 578.

The Court need not reach the threshold issue of Marentes' objectively reasonable expectation of coverage under the State Farm Policy because the Court finds below that the limitations on coverage are conspicuous, plain, and clear. *See Travelers*, 215 Cal. App. 4th at 578 (finding limitation of coverage to be conspicuous, plain, and clear after assuming a reasonable expectation of coverage).  Nonetheless, the Court notes that Marentes likely conceded that he did not have an expectation of coverage under the policy.  When asked why Marentes did not tender the accident to Defendant in a deposition, he responded, "Because [the accident]—it wasn't involving my cars, my personal cars."  Marentes Deposition at 26–27.

The Court first addresses whether the car business exclusion is conspicuous, plain, and clear and then addresses whether the definitions excluding the tow truck from being a covered

18

1    vehicle are conspicuous, plain, and clear.  Once again, only one of the limitations need to be

2    conspicuous, plain, and clear for coverage to be precluded under the State Farm Policy.

### i.    Car Business Exclusion

4        Plaintiffs make no argument that the car business exclusion is not "'conspicuous, plain,

5    and clear.'"  *Haynes*, 32 Cal. 4th at 1204.  Nonetheless, the Court addresses the issue to ensure

6    that Defendant has met its burden "of making coverage exceptions and limitations conspicuous,

7    plain and clear."  *Id.*  The Court first considers whether the exclusion is conspicuous and then

8    addresses whether it is "plain and clear."

9        First, to determine conspicuousness, California courts look to "how a coverage-limiting

10   provision actually has been positioned and printed within the policy at issue."  *Haynes*, 32 Cal.4th

11   at 1209.  Exclusionary clauses have been found to be conspicuous as a matter of law where the

12   clause is written under headings indicating a limitation of coverage such as "Exclusions" and

13   printed in a size and intensity identical to the rest of the policy.  *See Nat'l Ins. Underwriters v.*

14   *Carter*, 17 Cal. 3d 380, 385 (1976) (finding conspicuous, plain, and clear the last of eight

15   exclusions written "in printing of size and intensity identical to that of the rest of the policy");

16   *Dominguez v. Fin. Indem. Co.*, 183 Cal. App. 4th 388, 399 (2010) (finding conspicuous limiting

17   language placed in a policy under the headings "Exclusions" or "Reduction in Coverage").  Here,

18   the car business exclusion is the seventh item in the "Exclusions" section of the policy and is

19   written in all capital letters, causing it to stand out from the text of the policy provisions not

20   containing exclusions.  State Farm Policy at 11.  Thus, as in *Carter* and *Dominguez*, the car

21   business exclusion here is conspicuous.

22       Second, to be plain and clear, exclusions must be "stated precisely and understandably, in

23   words that are part of the working vocabulary of the average layperson."  *Dominguez*, 183 Cal.

24   App. 4th at 396.  Applying this standard, courts find limiting language to not be plain and clear

25   where the provision is ambiguous, the provision uses complicated words not within the knowledge

26   of average lay persons, or where the language is "confusing."  *Haynes*, 32 Cal. 4th at 1211

27   (finding exclusion not plain and clear because the exclusion used ambiguous terms that were not

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

obvious on their face, involved cross-references between multiple definitions and documents not in the insured's possession, and used "confusing language surrounding and introducing the actual text of the" exclusion); *see also Ponder v. Blue Cross of S. Cal.*, 145 Cal. App. 3d 709, 723 (1983) (holding that clause excluding coverage for "temporomandibular joint syndrome" without a definition for that disease was not plain and clear because it is a "technical medical term"). However, if the limiting language "clearly applies," courts have held the limiting language to be plain and clear. *Travelers*, 215 Cal. App. 4th at 578 (finding language conspicuous, plain, and clear where "the exclusion clearly applie[d]").

Here, the exclusion specifically states that "there is no coverage for an insured: . . . while maintaining or using a vehicle in connection with that insured's employment in or engagement of any kind in a car business." *Id.*  The term "car business" is defined as "a business or job where the purpose is to sell, repair, service, deliver, test, road-test, park, or store land motor vehicles or any type of trailer." *Id.* at 4.  The exclusion and corresponding definition are not ambiguous.  The language does not use any undefined term of art, and Plaintiffs do not dispute that the terms of the car business exclusion unambiguously apply to Marentes' accident with Bichegkueva.  *Travelers*, 215 Cal. App. 4th at 578 (finding language conspicuous, plain, and clear where "the exclusion clearly applie[d]").  Additionally, the exclusion and corresponding definition do not use complicated words that are not in "the vocabulary of average lay persons."  *Ponder*, 145 Cal. App. 3d at 723.  Finally, the language of the exclusion is simple and is not "confusing."  *Haynes*, 32 Cal. 4th at 1211.  Accordingly, the Court finds the car business exclusion to be conspicuous, plain, and clear.

### ii.     Non-Covered Vehicle Exclusions

Plaintiffs argue that the definition of a covered non-owned car, which excludes employer-owned vehicles, is not "conspicuous, plain, and clear."  Bichegkueva Resp. at 23 (citing *Haynes*, 32 Cal. 4th at 1204).  The Court first discusses whether the definition of non-owned car is conspicuous and then discusses whether it is plain and clear.

With respect to the conspicuousness requirement, Plaintiffs argue that the exclusion of

20

employer-owned cars is not conspicuous because it was not in bold and capital letters and it was placed in the Definitions section, rather than the Exclusions section of the policy.  Bichegkueva Resp. at 23.  California courts have regularly held that limitations of coverage made through defined terms in the definitions section of a policy are conspicuous.  In *S & H Ins. Co. v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 139 Cal. App. 3d 509 (1983), the California Court of Appeal held that a policy limitation made in a definition was conspicuous because "each defined term, such as '***automobile***,' is set with bold print in quotation marks, effectively drawing attention to the entire subheading of 'DEFINITIONS.'"  *Id.* at 516.  Additionally, "the definitions themselves begin on the first page of the pertinent part of the policy, a position more proximate in relation to the liability section than the designated 'EXCLUSIONS' themselves."  *Id.*; *see also Nat'l Auto. & Cas. Ins. Co. v. Stewart*, 223 Cal. App. 3d 452, 460 (1990) (finding limiting definition of "non-owned automobile" sufficiently conspicuous even though the definition section was placed at the end of the insurance policy).

Here, the exclusion of employer-owned cars is located in the Definitions section of the policy under the definition of "***non-owned car***."  State Farm Policy at 8.  The State Farm Policy explicitly states at the beginning of the Definitions section that defined terms will be written in bold and italics throughout the policy.  *Id.*  The defined term, "***non-owned car***," is set off in bold and italics throughout the policy and in the Definitions section, which signifies that the term is defined in the Definitions section.  *S & H*, 139 Cal. App. 3d at 516.  This use of defined terms is even clearer than *S & H* where the body of the policy at issue did not indicate which terms in the policy had definitions in the Definitions section.  *Id.*  In the instant case, the Definitions section is also located conspicuously as the first major section in the State Farm Policy, immediately prior to the Liability Coverage section.  *Id.*  Thus, "this is not a case in which an exclusionary clause is hidden in fine print in a policy section bearing no clear relationship to the insuring clause."  *Zubia v. Farmers Ins. Exchange*, 14 Cal. App. 4th 790, 796 (1993) (as modified).  Moreover, "[c]ontrary to plaintiffs' suggestion, the fact that the [limiting] provision and its subheading are printed in the same typeface as other provisions and subheadings does not render the [limiting] provision

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

inconspicuous." *Id.* at 795–96.  Just as in *S & H* and *Nat'l Auto.*, the limitations provided in the definitions section of the policy here are sufficiently conspicuous.

With respect to the plain and clear requirement, Plaintiffs argue without elaboration that the "sentence structure" of the definition of a non-owned car "is unclear to the average layperson." Bichegkueva Resp. at 23.[1]  The Court reproduces below the definition of non-owned car:

> **Non-Owned Car** means a car that is in the lawful possession of **you** or any **resident relative** and that neither:
> 1.       is **owned by**:
>       a.      **you**;
>       b.      any **resident relative**;
>       c.      any other **person** who resides primarily in **your** household; or
>       d.      an employer of any **person** described in a., b., or c. above;

State Farm Policy at 8.

However, Plaintiffs do not argue that the above exclusion of an employer-owned car in the definition of "non-owned car" is ambiguous or confusing.  *Compare Haynes*, 32 Cal. 4th at 1211 (finding exclusion to not be plain and clear where an ambiguous term was left undefined).  The "non-owned car" definition also does not use any complicated words that are outside "the vocabulary of average lay persons."  *Compare Ponder*, 145 Cal. App. 3d at 723 (holding that clause excluding coverage for temporomandibular joint syndrome without a definition for that disease was not plain and clear).  Finally, the sentence structure is not so complicated that an average lay person could not understand it.  *See State Farm Mut. Auto. Ins. Co. v. Morris*, 2016 WL 3947611, at *7 (D. Haw. July 19, 2016) (finding, under Hawaii law, that the plain language of an identical definition of non-owned car excluded coverage and that an average lay person would be able to understand that it excluded coverage).  Additionally, the definition is not more complicated than other exclusionary clauses that have been found to be plain and clear by California courts.  *See Dominguez*, 183 Cal. App. 4th at 402 (finding the following language to be

---

[1] Plaintiffs cite a declaration from their expert witness in support of their statement.  Bichegkueva Resp. at 23.  However, "[t]he opinion of a linguist or other expert as to the meaning of the policy is irrelevant to the court's task of interpreting the policy as read and understood by a reasonable lay person," which is a question of law.  *Nat'l Auto.*, 223 Cal. App. 3d at 458–59.

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

plain and clear: "If this policy provides coverage that exceeds the minimum limits required by the applicable Financial Responsibility Law of the State of California, or the state in which the accident occurs, then such amounts in excess of the minimum limits shall not apply to a loss where the operation, maintenance or use of your insured car is by a person other than you, a relative, and an agent or employee of you or a relative in the course and scope of their agency or employment.  However, this limitation/reduction does not apply to any liability incurred by you or a relative.").  Accordingly, the Court finds the exclusion of employer-owned cars in the definition of non-owned cars to be plain and clear.

Accordingly, the contract excludes coverage for the tow truck that was driven by Marentes through language that is conspicuous, plain, and clear.  The Court next considers whether, at any time, a potential for coverage existed under the State Farm Policy.

### 4.    Potential for Coverage

As described above, an insurer still has a duty to defend if, despite an eventual finding that an insurance policy does not provide coverage, the insurer is in possession of facts showing a potential for coverage.  *Montrose I*, 6 Cal. 4th at 295 (holding that duty to defend ends when it is apparent there is "no potential for coverage"); *Buss*, 16 Cal. 4th at 47–48 ("[I]n an action wherein all the claims are at least potentially covered, the insurer has a duty to defend."); *CNA Cas. of Cal. v. Seaboard Surety Co.*, 176 Cal. App. 3d 598, 605 (1986) (duty to defend existed if there was "any potential liability arising from facts available to the insurer from the [third-party] complaint or other sources available to [the insurer] at the time of the tender of the defense.").

Here, Plaintiffs do not argue and provide no evidence showing that Defendant was in possession of information creating a potential for coverage under the State Farm Policy.  In the letter from Aaron to Defendant tendering the defense and indemnity of the underlying lawsuit concerning the accident to State Farm, Aaron states that "[t]he incident giving rise to the lawsuit involves a motor vehicle collision in which Mr. Marentes was driving a tow truck, owned by his employer, Extreme Towing, Inc.  At the time of the incident Mr. Marentes was returning home from a towing operation he performed on behalf of Extreme Towing, Inc."  ECF No. 40-1.

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Above, the Court concluded there was no coverage under the State Farm Policy based on the same

2   facts.  Plaintiffs point to no additional evidence showing that Defendant was in possession of facts

3   indicating potential coverage.  Accordingly, the Court finds that there was never potential

4   coverage for the accident between Marentes and Bichegkueva, and Defendant never had a duty to

5   defend Marentes under the terms of the State Farm Policy.

6   ### 5.     Waiver and Estoppel

7       Plaintiffs argue that, even if there is no coverage under the policy, Defendant waived or

8   should be estopped from asserting its coverage defenses because Defendant allegedly provided a

9   defense to Marentes without explicitly reserving its right to assert coverage defenses at a later

10   time.  Bichegkueva Resp. at 23–25.  The burden is on the insured to prove that the assumption of a

11   defense establishes waiver or estoppel.  *State Farm Fire & Cas. Co. v. Jioras*, 24 Cal. App. 4th

12   1619, 1628–31 (1994) (holding that the insured failed to meet its burden where the insurer had

13   reserved its rights to assert coverage defenses).

14       Under California law, an insurer is precluded from asserting noncoverage in an action

15   concerning an insurance policy if the insurer assumed the defense of the insured without

16   disclaiming liability or giving notice of the insurer's reservation of rights.  *Garamendi v. Golden*

17   *Eagle Ins. Co.*, 116 Cal. App. 4th 694, 719 (2004) ("If a liability insurer, with knowledge of a

18   ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an

19   action brought against the insured, without disclaiming liability and giving notice of its reservation

20   of rights, it is thereafter precluded in an action upon the policy from setting up such ground of

21   forfeiture or noncoverage.").

22       California courts analyze an insurer's assumption of an insured's defense under theories

23   of waiver and estoppel.  To waive a coverage defense, the insurer needs to "intentionally

24   relinquish[] a known right."  *Id.* at 720.  In contrast, for estoppel to apply, two conditions must be

25   satisfied.  First, the insurer needs to have "acted in such manner as to cause the insured reasonably

26   to believe the insurer had relinquished" a coverage defense, which, in the insurance context, also

27   means that there must be potential coverage under the insurance policy.  *Id.*; *Ringler Assocs. Inc.*

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1190 (2000) (finding no estoppel where no coverage

2    potentially existed under the policy).  Second, the insured needs to have "relied upon [the insurer's

3    assumption of the insured's defense] to [the insured's] detriment."  *Garamendi*, 116 Cal. App. 4th

4    at 719.

5         An adequate reservation of rights will prevent waiver or estoppel.  *Id.* (finding estoppel

6    only because there was no reservation of rights).  A reservation of rights does not need to

7    specifically address each coverage defense, but can be general.  *Jioras*, 24 Cal. App. 4th at 1627

8    ("[T]he insurer accepted the defense subject to a "global" reservation of rights, and a generalized

9    reservation of rights is deemed adequate for [reserving his rights].");  *Cal. Union Ins. Co. v. Poppy*

10   *Ridge Partners*, 224 Cal. App. 3d 897, 901–02 (1990) (finding that a reservation of rights with

11   respect to specific grounds still was an effective general reservation of rights with respect to other

12   potential grounds for noncoverage where the reservation of rights referred to "any rights").

13   Additionally, where an insured has counsel, a reservation of rights is likely to be effective because

14   counsel will be able to explain the meaning of the reservation of rights to the insured.  *See Jioras*,

15   24 Cal. App. 4th at 1627 (finding a reservation of rights to be effective where "discussions were

16   held in the presence of [the insured's] son-in-law lawyer who was sophisticated in such matters").

17        Here, Defendant's appointed counsel for Marentes, Cholakian, associated as counsel in the

18   underlying action, *Marentes I*, on May 12, 2015.  Bichegkueva Resp. at 6.  The Court first

19   addresses the threshold question of whether Defendant sufficiently reserved its rights before the

20   representation began.  *See Jioras*, 24 Cal. App. 4th at 1627 (finding no estoppel due to the

21   insurer's reservation of rights).  Before May 12, 2015, there are two pieces of correspondence sent

22   to Marentes relevant to the reservation-of-rights analysis.  First, on September 23, 2014,

23   Defendant denied coverage to Marentes because the tow truck was not a covered vehicle under the

24   policy.  ECF No. 40-6.  Second, on March 12, 2015, Defendant sent a letter to Marentes in which

25   Defendant stated that it would provide Marentes a defense and would be issuing a full reservation

26   of rights.  Def. March 12, 2015 Letter.  Specifically, the March 12, 2015 letter to Bichegkueva's

27   counsel stated: (1) that Defendant would provide Marentes "a defense under a full reservation of

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

rights," (2) that Defendant's appointed counsel would "contact Mr. Marentes shortly," and (3) that Defendant would "also be issuing a full reservation of rights to Mr. Marentes."  Def. March 12, 2015 Letter.  Additionally, the March 12, 2015 letter stated that Defendant did "not intend, by this letter, to waive any rights under the policy or any policy defense" and that Defendant "specifically reserves its right to assert defenses at any time."   Def. March 12, 2015 Letter.

Defendant's statement that the defense would be subject to a "full reservation of rights" is sufficient under *Jioras* and *Poppy Ridge* to reserve Defendant's rights under the policy.  *See Jioras*, 24 Cal. App. 4th at 1627 ("[T]he insurer accepted the defense subject to a "global" reservation of rights, and a generalized reservation of rights is deemed adequate for this purpose."); *Poppy Ridge*, 224 Cal. App. 3d at 901–02 ("[T]he capitalized last sentence of each of the first two letters [reserving] 'any rights,' adequately reserved Cal Union's rights under the policies . . . .").  Moreover, Aaron, Marentes' counsel, and not Marentes made the decision to allow Cholakian to associate as counsel on May 12, 2015.  *See* Marentes Decl. ¶ 9 (indicating that Marentes had no knowledge that Cholakian had been representing him until at least May 28, 2015); Bichegkueva Resp. at 6 (conceding that Aaron's firm allowed Cholakian to associate as counsel).  Thus, as in *Jioras*, the presence of counsel makes it unlikely that Marentes did not understand that Defendant was reserving its right to assert coverage defenses.  *See Jioras*, 24 Cal. App. 4th at 1627 (finding a reservation of rights to be effective where "discussions were held in the presence of Khosrovani's son-in-law lawyer who was sophisticated in such matters").  Thus, the March 12, 2015 letter constitutes an adequate reservation of rights, and Plaintiffs' claims for estoppel and waiver fail.

Accordingly, because the accident between Marentes and Bichegkueva was not potentially covered under the State Farm Policy, and Plaintiffs' estoppel and waiver arguments fail, the Court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' claim for breach of contract.

**B.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs' second cause of action is breach of the implied covenant of good faith and fair

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

dealing, which is a covenant implied in all insurance contracts under California law.  *See Hanson ex rel. Hanson v. Prudential Ins. Co. of Am.*, 783 F.2d 762, 766 (9th Cir. 1985).  The implied covenant of good faith and fair dealing "prevents a party from acting in bad faith to frustrate the contract's *actual* benefits."  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 n.18 (2000).  A claim for breach of the implied covenant of good faith and fair dealing requires that "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990).  The mere denial of benefits does not demonstrate bad faith.  *See Safeco Ins. Co. of Am. v. Guyton*, 692 F.2d 551, 557 (9th Cir.1982) (where a policy dispute involved a genuine legal issue concerning liability, insurer could not have been acting in bad faith by refusing to pay claim).  Rather, "[t]here must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'"  *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006) (quoting *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001)).

However, although there is generally a duty of good faith under California insurance contracts, in *Waller v. Truck Insurance Exchange*, the California Supreme Court held that "[i]t is clear that if there is no *potential* for coverage [under an insurance policy] and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer."  *Waller*, 11 Cal. 4th at 36 (citing *Love*, 221 Cal. App. 3d at 1153).  The implied covenant is "a supplement to the express contractual covenants, [which exists] to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  *Love*, 221 Cal. App. 3d at 1153 (emphasis in original).  "Absent . . . [a] *primary* right [that has been breached] . . . the *auxiliary* implied covenant has nothing upon which to act as a supplement, and

should not be endowed with an existence independent of its contractual underpinnings." *Waller*,

11 Cal. 4th at 36 (internal quotation marks and citation omitted).  Thus, the *Waller* court held that

the insured did not have a claim for breach of the implied covenant of good faith and fair dealing

for the insurer's refusal to provide the insured a defense because the insurance policy did not even

potentially cover the underlying incident.  *Id.*

Here, as discussed above, there is no potential for coverage or duty to defend under the

State Farm Policy.  However, Plaintiffs argue that even in the absence of potential coverage,

Plaintiffs may bring a claim for breach of the implied covenant of good faith and fair dealing

because Defendant undertook Marentes' defense, which Plaintiffs argue triggered a duty to

provide a defense and a corresponding cause of action under the implied covenant.  Marentes

Resp. at 5.  For the reasons discussed below, the Court disagrees with Plaintiffs because their

theory is inconsistent with *Waller* and attempts to "endow [the implied covenant] with an

existence independent of its contractual underpinnings." *Waller*, 11 Cal. 4th at 36.  The Court first

discusses two cases that Plaintiffs contend provide a cause of action for breach of the implied

covenant of good faith and fair dealing under the circumstances presented here: *Mosier v. S. Cal.*

*Physicians Ins. Exch.*, 63 Cal. App. 4th 1022 (1998), and *Travelers Ins. Co. v. Lesher*, 187 Cal.

App. 3d 169 (1986), *disapproved on other grounds in Buss v. Superior Court*, 16 Cal. 4th 35

(1997).  Second, the Court addresses two additional cases that Plaintiffs contend provide a cause

of action in the absence of a potential for coverage.  *See Brizuela v. CalFarm Ins. Co.*, 116 Cal.

App. 4th 578, 594–95 (2004); *Murray v. S.F. Fire & Cas. Co.*, 219 Cal. App. 3d 58, 66 (1990)

The Court first discusses the California appellate court decisions in *Mosier* and *Lesher* and

then discusses whether they are consistent with *Waller*, which sets the standard for breach of

implied covenant claims under California law.  In *Mosier*, a California appellate court held that,

when an insurer provides a defense to an uninsured individual, the insurer "owe[s] the same duties

to defend [the plaintiff] as it would have had [the plaintiff] in fact been its insured."  *Mosier*, 63

Cal. App. 4th at 1043.  However, although facially similar to the instant case on its facts, *Mosier*

did not involve a claim for breach of the implied covenant of good faith and fair dealing at all, but

United States District Court
Northern District of California

rather involved tort claims for breach of fiduciary duty and fraud.  *Id.*  In fact, the duty to defend in *Mosier* was "based on the [tort law] principle that one who voluntarily comes to the aid of another, having no initial duty to do so, becomes bound to exercise due care in the performance of the duties it undertakes to provide." *Id.* at 1040 (citations omitted).  Therefore, *Mosier* is inapposite for determining the viability of a cause of action based on the implied covenant of good faith and fair dealing, which requires, under *Waller*, a potential for coverage and "duty to defend *under the terms of the policy*."  *Waller*, 11 Cal. 4th at 36 (emphasis added); *see also Moon v. Cincinnati Ins. Co.*, 975 F. Supp. 2d 1326, 1332 (N.D. Ga. 2013) ("[*Mosier*] is not applicable here because it was a case where a plaintiff brought fraud, breach of fiduciary duty, and conspiracy claims against an insurance company that had schemed to provide a bogus courtesy defense in order to convince an uninsured doctor to admit liability. Here, the Plaintiffs are not bringing claims for fraud or conspiracy or breach of fiduciary duty, but for [breach of the implied covenant of good faith and fair dealing].").

In *Lesher*, a California appellate court refused to overturn a verdict for negligence and breach of the implied covenant of good faith and fair dealing even though the trial court had found no coverage under the insurance policy.  *Id.* at 204.  However, the defendant in *Lesher* did not raise—and the *Lesher* court explicitly stated it was not reaching—the threshold question of whether a claim for breach of the implied covenant of good faith and fair dealing could be brought in the absence of a potential for coverage.  *Id.* at 187.  The Court noted that "[n]either party has cited any case in which liability has been imposed on an insurer" for breach of the implied covenant of good faith and fair dealing for an inadequate defense in the absence of a potential for coverage.  *Id.*  Additionally, since *Lesher*, no California appellate decision has imposed liability for breach of the implied covenant of good faith and fair dealing for an inadequate defense in the absence of a potential for coverage.  *See, e.g.*, *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169 (1988) (holding that assumption of defense cannot be basis for claim for breach of the implied covenant of good faith and fair dealing where contract had been rescinded); *cf. U.S. Fid. & Guar. Co. v. San Diego Unified Port Dist.*, 2009 WL 3157485, at *5 (S.D. Cal. Sept. 25,

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2009) ("[N]o subsequent case has cited *Lesher* for the proposition that a party may pursue" a negligence action against an insurer in the absence of potential coverage).  Therefore, because *Lesher* explicitly abstained from deciding whether undertaking a defense can provide a claim for breach of the implied covenant of good faith and fair dealing in the absence of potential coverage, it does not support Plaintiffs' theory of relief.  *See Canales v. City of Alviso*, 3 Cal. 3d 118, 128 n.2 (1970) ("'It is axiomatic that cases are not authority for propositions not considered.'" (citation omitted)).

Thus, for the reasons discussed above, *Mosier* does not apply here because its holding was based solely on tort principles, and *Lesher* explicitly abstained from recognizing a cause of action for breach of the implied covenant of good faith and fair dealing in the absence of potential coverage.  However, even if *Mosier* and *Lesher* were seen as supporting a cause of action under the implied covenant in the absence of potential coverage, such holdings would be, as discussed below, inconsistent with the California Supreme Court's holding in *Waller*.  *Waller*'s holding clearly states that a bad faith claim can arise only if there is a "duty to defend *under the terms of the policy*."  *Waller*, 11 Cal. 4th at 36 (emphasis added).  Although *Waller* did not involve circumstances where the insurer had undertaken the defense, the *Waller* court notes that a "primary right" under the contract must be frustrated for a claim for breach of the implied covenant of good faith and fair dealing to exist.  *Id.*  Indeed, the implied covenant of good faith and fair dealing only "prevents a party from acting in bad faith to frustrate the contract's *actual* benefits."  *Guz*, 24 Cal. 4th at 353 n.18 (noting that a claim for breach of the implied covenant may exist if a party's actions, while not violating the contract, "cheat the [insured] out of another contract benefit to which the [insured] was clearly entitled").  Therefore, without coverage and a duty to defend under the terms of the policy, the insured is not deprived of any "actual benefit" under the contract.  Thus, the California Supreme Court's holding in *Waller*, which requires the deprivation of actual benefits under the contract, would prevent a cause of action for breach of the implied covenant of good faith and fair dealing in the absence of potential coverage even if one were supported by the California appellate decisions of *Mosier* and *Lesher*.

United States District Court
Northern District of California

30

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    The Court next turns to two cases cited by Plaintiffs that note hypothetical scenarios where

2    a cause of action for breach of the implied covenant of good faith and fair dealing may be brought

3    in the absence of coverage.  *See Brizuela*, 116 Cal. App. 4th at 594–95 ("[I]nsurer might be liable

4    for bad faith if, instead of investigating a non-covered claim, insurer embarked on campaign to

5    intimidate insured into settling."  (citation omitted)); *Murray*, 219 Cal. App. 3d at 66 ("[I]nsurance

6    company might be liable if it unreasonably delayed in performing an investigation of a claim

7    before concluding there was no coverage and the insured suffered consequential loss as a result of

8    the delay.").

9    *Brizuela* and *Murray* do not apply here for three reasons.  First, the statements in *Brizuela*

10   and *Murray* have not been followed in subsequent California cases because they are dicta.

11   *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1253 (2006) (finding *Brizuela*'s

12   and *Murray*'s statements implying availability of a cause of action in the absence of coverage to

13   be dicta).  Second, the statements in *Brizuela* and *Murray* directly conflict with the California

14   Supreme Court's decision in *Waller*.  *See Waller*, 11 Cal. 4th at 36 ("It is clear that if there is

15   no *potential* for coverage [under an insurance policy] and, hence, no duty to defend under the

16   terms of the policy, there can be no action for breach of the implied covenant of good faith and fair

17   dealing.").  Moreover, *Murray* was issued before *Waller*, and *Brizuela* neither discusses *Waller*

18   nor justifies why a hypothetical cause of action would exist in the absence of potential coverage.

19   *Murray*, 219 Cal. App. 3d at 66; *Brizuela*, 116 Cal. App. 4th at 594–95.

20   Third, the potential liability in *Brizuela* and *Murray*, if it exists at all, would only apply in

21   cases involving "extreme conduct" as described in *Brizuela*, or "detrimental reliance" as described

22   in *Murray*.  *See Benavides*, 136 Cal. App. 4th at 1253 (refusing to apply *Murray* and *Brizuela*

23   partly because "[t]here are no elements of detrimental reliance as in *Murray* nor the extreme

24   conduct discussed in *Brizuela*").  Here, there is no evidence that Defendant, "embarked on [a]

25   campaign to intimidate [the] insured into settling," or any evidence of intimidation at all.

26   *Brizuela*, 116 Cal. App. 4th at 594–95.  The record also contains no evidence that Marentes

27   detrimentally relied on the defense provided by Defendants as required in *Murray*.

28   
Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Here, Marentes entered the settlement agreement with Bichegkueva and, in compliance with that agreement, later stipulated to the entry of default and did not seek to challenge the amount of the default judgment.  ECF No. 40-9.  The record contains no evidence to indicate that a different course of events would have occurred had Defendant not undertaken the defense at all: Bichegkueva's counsel stated explicitly that he was going to enforce the settlement agreement if Defendant did not act, ECF No. 40-8 ("If [Defendant] refuses to provide a defense to Mr. Marentes then the Plaintiff will proceed forward and have a default and judgment entered against [Marentes]."), and the record contains no indication that Marentes would have sought other means to challenge the settlement, Marentes Decl. ¶ 4 (indicating that Marentes felt relieved when Defendant agreed to defend him, but not indicating that he would have taken any different action if Defendant had not assumed his defense).  At most, Marentes' current circumstances are the same as they would have been had Defendant not chosen to intervene at all.  *Cf. Allstate Ins. Co. v. Barnett*, 2012 WL 707421, at *3 (N.D. Cal. Mar. 5, 2012) (finding no claim for breach of the implied covenant of good faith and fair dealing for failure to settle partly because "if Allstate had simply denied coverage outright, it would have had no duty to settle and hence no liability for bad faith in refusing to settle timely").  Such circumstances do not indicate detrimental reliance as described in *Murray*.

The Court finds that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is barred by *Waller*.  Therefore, the Court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### C.    Promissory Fraud and Fraudulent Concealment

Defendant argues that summary judgment should be entered against Plaintiffs on their claims for promissory fraud and fraudulent concealment.[2]  Mot. at 18–20; Reply at 15.  Defendant

---

[2] Although the claims are termed as "fraud and concealment" in Plaintiffs' complaint and Defendant refers to them generally as "fraud" claims, Notice of Removal Ex. 1 at 25, the claims are for fraud based on allegedly false promises—referred to in the case law as promissory fraud—and for concealment that is fraudulent in nature—referred to in the case law as fraudulent

32

argues that Plaintiffs' promissory fraud and fraudulent concealment claims fail because they have been abandoned and because the evidence Plaintiffs provide is insufficient to satisfy the elements of promissory fraud and fraudulent concealment.  Mot. at 18–20; Reply at 15.  The Court first discusses abandonment, then discusses the elements of Plaintiffs' promissory fraud cause of action, and finally discusses the elements of Plaintiffs' fraudulent concealment cause of action.

### 1.   Abandonment

Plaintiffs fail to even mention their claims for promissory fraud and fraudulent concealment in Plaintiffs' opposition to Defendant's motion for summary judgment.  Reply at 15. When a non-moving party opposes summary judgment with respect to some claims, but not others, "a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."  *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014); *see also Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) ("Ramirez abandoned his state law claims by not addressing them in either his Motion for Partial Summary Judgment or his Opposition to Defendants' Motion for Summary Judgment."); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (upholding finding that the plaintiff "abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment").  "Generally . . . a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others."  *Jackson*, 766 F.3d at 196.  Thus, in *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128 (2d Cir. 2016), the Second Circuit found certain hostile-work-environment claims abandoned because the brief in opposition to the defendant's motion for summary judgment "failed to support or even address the purported hostile-work-environment claims."  *Id.* at 143.

Here, Plaintiffs argue that Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing survive summary judgment.  *See, e.g.*, Bichegkueva Resp. at 17.  However, Plaintiffs are silent as to their claims for promissory fraud

---

concealment.  Thus, in this Order, the Court uses the terms promissory fraud and fraudulent concealment.

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    and fraudulent concealment.  *See Kovaco*, 834 F.3d at 143 (finding claims for hostile work

2    environment abandoned because "the brief [in opposition to summary judgment] failed to support

3    or even address the purported hostile-work-environment claims").  In addition, Plaintiffs make no

4    mention of the promissory fraud and fraudulent concealment in Plaintiffs' separate motion for

5    summary judgment, filed on September 29, 2016.  ECF No. 67; *see Campbell v. Feld Entm't, Inc.*,

6    75 F. Supp. 3d 1193, 1204 (N.D. Cal. 2014) (finding certain claims abandoned partly because

7    "Plaintiffs make no argument in support of either cause of action in their opposition to

8    Defendants' motion" or "in connection with their own summary judgment motion").  Accordingly,

9    the Court finds that Plaintiffs have abandoned the promissory fraud and fraudulent concealment

10   claims.

11           Additionally, for the reasons discussed below, even if Plaintiffs' claims for promissory

12   fraud and fraudulent concealment were not abandoned, Plaintiffs' claims fail as a matter of law.

13   The Court first addresses the promissory fraud claim and then addresses the fraudulent

14   concealment claim.

15                          **2.       Promissory Fraud**

16           "The elements of fraud are: (1) a misrepresentation (false representation, concealment, or

17   nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance;

18   (4) justifiable reliance; and (5) resulting damage."  *Robinson Helicopter Co. v. Dana Corp.*, 34

19   Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).  While a

20   misrepresentation is generally only actionable if the misrepresentation concerns past or existing

21   material facts, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991), a

22   promise to do something in the future may constitute intentional promissory fraud if it was made

23   without any intention to perform, *Lazar*, 12 Cal. 4th at 638.  However, "something more than

24   nonperformance is required to prove the defendant's intent not to perform his promise."  *Tenzer v.*

25   *Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985) (internal quotation marks and citations omitted).  A

26   "plaintiff in an action on a fraudulent promise must produce evidence of the promisor's intent to

27   mislead him."  *Id.*

28

United States District Court
Northern District of California

34

1    Here, Plaintiffs' complaint alleges that Defendant fraudulently promised Marentes that

2    Defendant would "provide a complete, proper[,] and immediate defense for Marentes in [*Marentes*

3    *I*]."  Notice of Removal Ex. 1 ¶ 66(a).  Plaintiffs' complaint alleges that this promissory fraud

4    claim arises from Defendant's March 12, 2015 letter and Defendant's May 20, 2015 letter.  As

5    discussed above, the March 12, 2015 letter stated that Defendant would provide Marentes a

6    defense subject to a "full reservation of rights."  The May 20, 2015 letter stated that Defendant

7    would defend Marentes, but specified that Defendant was reserving its right to assert coverage

8    defenses and to seek reimbursement of defense costs.  Def. March 12, 2015 Letter; Def. May 20,

9    2015 Letter.

10    In response to these contentions in the complaint, Defendant concedes that Defendant

11    promised to defend Marentes in both letters, but Defendant also notes that it reserved its rights in

12    both letters as well.  Mot. at 24.  Defendant argues that "Plaintiffs cannot establish that State Farm

13    knowingly made any material misrepresentation of fact, or that plaintiffs justifiably relied on any

14    such purported misrepresentation under the circumstances of this case[,] . . . or any resulting

15    damage."  Mot. at 19–20.

16    The Court next addresses whether Plaintiffs have provided evidence of "resulting

17    damages," which involves a two-step analysis.  First, the plaintiff must have "suffered

18    consequential damages."  *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) (internal

19    quotation marks and citation omitted).  Second, those damages must have been "caused by the

20    actions [the plaintiff] took in reliance on the defendant's misrepresentations."  *Id.*  "Assuming . . .

21    a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages

22    sustained were otherwise inevitable or due to unrelated causes."  *Id.* (citation omitted); *see also*

23    *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1053 (1991) ("[N]o case has been found where the

24    defendant's act could be called a substantial factor [in causing the resulting damages] when the

25    event would have occurred without [the defendant's act].").  Indeed, "[i]f the defrauded plaintiff

26    would have suffered the alleged damage even in the absence of the fraudulent inducement,"

27    causation is not established.  *Beckwith*, 205 Cal. App. 4th at 1064; *see also Magpali v. Farmers*

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

*Grp., Inc.*, 48 Cal. App. 4th 471, 480 (1996) (finding fraud where an employer "uses misrepresentations to induce a party to change employment when the objective could not have been achieved truthfully, and the party is *left in worse circumstances* than those in which he would have found himself had he not been lied to . . . ." (emphasis added)).

Here, Plaintiffs' complaint alleges that Marentes relied on Defendant's allegedly false promises by "allow[ing Defendant] to appoint the Cholakian Firm to appear as attorneys of record." Notice of Removal Ex. 1 ¶ 66(l). As discussed above, Aaron allowed Cholakian to associate as counsel for Marentes on May 12, 2015. Bichegkueva Resp. at 6. Allegedly, this reliance caused Plaintiffs to be "denied the coverage benefits of the State Farm Policy," caused Plaintiffs to incur "costs and expenses," and "exposed [Marentes] to liability." *Id.* ¶ 70. The Court first addresses whether Defendant has provided sufficient evidence of damages and then discusses whether those damages were caused by Marentes' reliance on the allegedly false promises.

### a.   Evidence of Damages

The only evidence in the record of Marentes' damages is the default judgment that was entered against Marentes after a prove-up hearing on March 28, 2016. ECF No. 48-33. The default judgment constitutes a compensable harm despite the accompanying covenant not to execute. *See Consol. Am. Ins. Co. v. Mike Soper Marine Servs.*, 951 F.2d 186, 190–91 (9th Cir. 1991) (holding that a judgment constituted harm despite a covenant not to execute because the insured "was left . . . with a judgment against him that could have collateral adverse effects in several respects, including on his future credit").

The record contains no evidence of the three other types of damages that were alleged in the complaint: loss of coverage, costs and expenses, including attorney's fees, and exposure to liability. Marentes suffered no damages from the denial of coverage benefits because, as discussed in the breach of contract section, above, Marentes was not covered under the State Farm Policy. Plaintiffs provide no evidence that Marentes has incurred "costs and expenses" such as attorney's fees. *See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118,

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1132 (2012) (upholding grant of summary judgment where the plaintiff "failed to identify this evidence [of damages] to the trial court").  Aaron, Marentes' counsel, was paid by Extreme Towing's insurance company, and Cholakian's fees were paid by Defendant.  Finally, Plaintiffs do not define "exposure to liability" or explain how Marentes suffered such exposure as a result of his acceptance of Cholakian as counsel.  Thus, the only damage at issue here is the default judgment entered against Marentes.

b.      **Causation of Damages**

Next, the Court turns to whether the harm suffered by Marentes, the default judgment with a covenant not to execute, resulted from Marentes' reliance on Defendant's allegedly false promises.  Here, the record shows that Marentes "would have suffered the alleged damage even in the absence of the fraudulent inducement." *Beckwith*, 205 Cal. App. 4th at 1064; *Magpali*, 48 Cal. App. 4th at 480 (requiring the plaintiff to be "left in worse circumstances than those in which he would have found himself had he not been lied to . . . .").  Pursuant to the settlement agreement with Bichegkueva, Marentes stipulated to the entry of default before accepting Cholakian's defense and did not challenge the amount of the default judgment.  ECF No. 40-9; Dobrin Decl. ¶ 3.  The record contains no evidence that Marentes is "in worse circumstances" than he otherwise would be had Defendant not allegedly lied.  *Magpali*, 48 Cal. App. 4th at 480.  In fact, Bichegkueva's counsel indicated that if Defendant had not promised to defend Marentes, the entry of default and default judgment would have occurred even sooner.  *See* ECF No. 40-8 ("If [Defendant] refuses to provide a defense to Mr. Marentes then the Plaintiff will proceed forward and have a default and judgment entered against [Marentes]."); Notice of Removal Ex. 1 ¶ 66(l) (indicating that, absent the March 12, 2015 letter, Bichegkueva would have enforced the settlement earlier).  Furthermore, the record contains no evidence that, if Marentes had rejected Cholakian as his counsel or if Defendant had not promised to defend Marentes, Marentes would have taken any other action to prevent the execution of the settlement agreement.  Marentes Decl. ¶ 4 (indicating that Marentes felt relieved when Defendant agreed to defend him, but not indicating that he would have taken any different action if Defendant had not assumed his

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    defense).  Thus, Plaintiffs have not shown that Marentes' alleged damages, the default judgment,

2    occurred due to Marentes' reliance on Defendant's alleged false promises.

3        Because Plaintiffs have abandoned their promissory fraud claims and have not shown

4    reliance resulting in damages, Plaintiffs' claim for promissory fraud fails.  Therefore, the Court

5    GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' promissory fraud

6    claim.

7                    **3.      Fraudulent Concealment**

8        Plaintiffs' complaint alleges that "Defendant[] intentionally concealed from Plaintiffs

9    when they agreed to defend Marentes what rights that they would be reserving."  Notice of

10   Removal Ex. 1 ¶ 66(b).  Specifically, Plaintiffs' complaint alleges that Defendant's March 12,

11   2015 letter promising to defend Marentes subject to a reservation of rights failed to inform

12   Marentes that Defendant was reserving its right under California law to "seek reimbursement of

13   the defense fees and costs incurred for the defense of Marentes" from Marentes.[3]  *Id.*

14       "The required elements for fraudulent concealment are (1) concealment or suppression of a

15   material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant

16   intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the

17   plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known

18   of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the

19   concealment or suppression of the fact."  *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238

20   Cal. App. 4th 124, 162 (2015).

21       The court discusses the fifth element of fraudulent concealment, that is, whether "plaintiff

22   sustained damage as a result of the concealment or suppression of the fact."  *Id.*  Unlike

23   Defendant's March 12, 2015 letter, Defendant's May 20, 2015 letter explicitly reserved

24   Defendant's right to seek reimbursement.  Thus, Plaintiffs must show that Marentes relied on the

25

26   _____

27   [3] Such reimbursement is allowed where there is no potential for coverage under an insurance
     policy.  *See Buss*, 16 Cal. 4th at 47–48 (allowing insurer to obtain reimbursement of defense costs
     on claims for which there was never a potential for coverage under the policy).

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    March 12, 2015 letter's alleged omission of the reservation to seek reimbursement and suffered

2    resulting damages in the window between the March 12, 2015 letter and the May 20, 2015 letter.

3        Plaintiffs allege that Marentes would not have accepted Defendant's appointed counsel,

4    Cholakian, had Marentes known Defendant would seek reimbursement and that, as a result, he

5    suffered the entry of default.  Notice of Removal ¶ 66(b).  However, this alleged reliance, the

6    acceptance of Cholakian as counsel, occurred on May 12, 2015, when Aaron allowed Cholakian to

7    associate as counsel on Marentes' behalf to oppose the motion to enforce the settlement

8    agreement.  Bichegkueva Resp. at 6.  This reliance occurred after Marentes had stipulated to the

9    entry of default.  Dobrin Decl. ¶ 3.  As a result, the state court judge refused to hear any opposition

10   to the motion to enforce the settlement because Marentes had already stipulated to its entry.  ECF

11   No. 48-28 at 2–4.  Thus, even if Marentes had refused Cholakian as his counsel at that point,

12   default would have been entered against Marentes.  The entry of default, therefore, could not have

13   resulted from Marentes' alleged reliance.

14       Moreover, Marentes never reimbursed Defendant.  After Marentes and Aaron objected to

15   Defendant seeking reimbursement on May 28, 2015, Defendant stated it would no longer seek

16   reimbursement of defense fees, and no such defense fees were ever awarded.  ECF No. 48-30.

17   Thus, the defense fees themselves cannot be the basis of a fraudulent concealment claim.

18       Accordingly, because Plaintiffs abandoned their fraudulent concealment claim and have

19   failed to provide evidence of resulting damages, the Court GRANTS Defendant's motion for

20   summary judgment with respect to Plaintiffs' fraudulent concealment claim.

21       **E.     California's Unfair Competition Law**

22       Plaintiffs' complaint alleges a violation of California's Unfair Competition Law ("UCL"),

23   codified at Business and Professions Code §§ 17200 *et seq.*  As discussed above, when a non-

24   moving party opposes summary judgment with respect to some claims, but not others, "a court

25   may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that

26   are not defended have been abandoned."  *Jackson*, 766 F.3d at 198.  As with Plaintiffs' claims for

27   promissory fraud and fraudulent concealment, Plaintiffs fail to mention their claim under the UCL.

28
Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Therefore, the Court finds that Plaintiffs have abandoned their UCL claim.

2          Regardless, the court addresses whether Plaintiffs could survive summary judgment on

3   their UCL claim.  To state a claim under the UCL, a plaintiff must allege an "unlawful, unfair, or

4   fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising."  Cal.

5   Bus. & Prof. Code § 17200.  Only two forms of relief are available under the UCL: restitution and

6   injunctive relief.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)

7   ("Prevailing plaintiffs are generally limited to injunctive relief and restitution." (citation omitted)).

8   Here, Plaintiffs' complaint seeks only injunctive relief, general damages, special damages, and

9   attorney's fees and costs.  Notice of Removal Ex. 1 at 30.  Of the damages Plaintiffs seek, only

10  injunctive relief is available under the UCL.  *See Korea Supply*, 29 Cal. 4th at 1144 (only allowing

11  restitution and injunctive relief).

12         However, to seek injunctive relief under the UCL, Plaintiffs must have Article III standing

13  for the claim to survive in federal court.  *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919,

14  924 (N.D. Cal. 2012) ("UCL plaintiffs must still satisfy federal constitutional standing

15  requirements, including those pertinent to injunctive relief."  (citing *Hangarter v. Provident Life &*

16  *Accident Ins. Co.*, 373 F.3d 998, 1003 (9th Cir. 2004)).  Generally, Article III standing can be

17  shown if the plaintiff has "suffered some actual or threatened injury as a result of the putatively

18  illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action

19  and is likely to be redressed by a favorable decision."  *Valley Forge Christian Coll. v. Ams. United*

20  *for Separation of Church & State*, 454 U.S. 464, 472 (1982) (internal citations and quotations

21  omitted).  However, where a plaintiff seeks injunctive relief, the plaintiff "must demonstrate that

22  [he or she is] realistically threatened by a repetition of the violation."  *Gest v. Bradbury*, 443 F.3d

23  1177, 1181 (9th Cir. 2006) (internal quotation marks omitted); *see also Chapman v. Pier 1*

24  *Imports (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue

25  injunctive relief . . . [the] plaintiff must demonstrate a real and immediate threat of repeated injury

26  in the future."  (internal quotation marks omitted)).

27         Here, the record contains no evidence that Plaintiffs have an ongoing contractual

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    relationship with Defendant.  *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 WL

2    3879028, at *4 (N.D. Cal. July 18, 2016) ("Circle Click no longer has a contractual relationship

3    with Regus, and thus 'is not personally threatened by [Regus's] conduct.'"  (citation omitted)).

4    Similarly, Plaintiffs "ha[ve] made no showing that [they are] willing to use [Defendant's] services

5    in the future (one ground that some courts have held may be sufficient to find Article III

6    standing)."  *Id.* (footnote omitted).  Therefore, Plaintiffs lack standing to seek injunctive relief in

7    federal court.

        **E.**      **Punitive Damages**

8

9          Above, the Court found that Plaintiffs' claims fail as a matter of law.  Therefore, the Court

10   need not reach Defendant's arguments regarding punitive damages.

        **F.**      **Rule 56(d) Motion**

11

12         Plaintiffs argue that the Court should deny the motion for summary judgment under

13   Federal Rule of Civil Procedure 56(d).  Bichegkueva Resp. at 14–16.  Under Rule 56(d),[4] "[i]f a

14   nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

15   essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer

16   considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

17   discovery; or (3) issue any other appropriate order."  A party seeking relief under Rule 56(d) must

18   show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further

19   discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary

20   judgment."  *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827

21   (9th Cir. 2008); *see also Margolis v. Ryan*, 140 F.3d 850, 853–54 (9th Cir. 1998) (district court

22   correctly denied motion for continuance to engage in further discovery under Rule 56(d) where

23   plaintiff did not provide any basis or factual support for his assertions that further discovery would

24

---

25   [4] Federal Rule of Civil Procedure 56(d) was formerly Rule 56(f). The rule was amended on
26   December 1, 2010. As the Committee notes state, "Subdivision (d) carries forward without
    substantial change the provisions of former subdivision (f)."  Fed.R.Civ.P. 56, 2010 committee
27   notes.  The Court thus applies existing precedent under Rule 56(f).  *Roberts v. McAfee, Inc.*, 660
    F.3d 1156, 1169 (9th Cir. 2011).

28

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1   lead to the facts and testimony he described, and his assertions were "based on nothing more than

2   wild speculation").  The party seeking relief must "explain why those facts would preclude

3   summary judgment." *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).  The

4   party must also show that it "diligently pursued its previous discovery opportunities, and . . .

5   demonstrate that allowing additional discovery would . . . preclude[ ] summary judgment." *Bank*

6   *of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999).

7          Plaintiffs cite to a number of documents that were not produced and depositions that had

8   not yet occurred when Plaintiffs' opposition to the motion for summary judgment was filed on

9   July 22, 2016.  However, Plaintiffs reference only two "facts" that Plaintiffs hope to reveal

10  through further discovery.  First, Plaintiffs seek information on the "reason(s) [Defendant] agreed

11  to defend Marentes."  Bichegkueva Resp. at 14.  However, as of July 15, 2016, Defendant's

12  counsel instructed two of Defendant's employees not to answer questions on this topic based on

13  the attorney-client privilege.  Plaintiffs do not argue that this information does not fall within the

14  attorney-client privilege and have not moved to compel discovery on this topic.  Finally, Plaintiffs

15  do not explain or show how this information would preclude summary judgment.

16         Second, Plaintiffs reference attorney invoices that "will provide a road map of the close

17  cooperation between [Defendant], the Hayes Firm[,] and the Cholakian Firm."  Bichegkueva Resp.

18  at 15.  Plaintiffs do not explain how these communications and the cooperation between the firms

19  and Defendant would "preclude summary judgment." *Tatum*, 441 F.3d at 1100.  Above, the Court

20  granted summary judgment on each claim based on reasons that had nothing to do with the state of

21  mind and intent of Defendant, Cholakian, and Hayes.  The Court found no breach of contract and

22  no claim for breach of the implied covenant of good faith and fair dealing because there is no

23  coverage under the policy.  The Court found that Plaintiffs abandoned their promissory fraud and

24  fraudulent concealment claims and, regardless, the record failed to show evidence of Marentes'

25  reliance on the alleged concealment and false promises.  Finally, the Court found that Plaintiffs

26  had abandoned the UCL claim, and alternatively, that the UCL claim failed regardless.  Thus,

27  additional discovery on the relationship between State Farm, Cholakian, and Hayes would not

28

42

United States District Court
Northern District of California

1   preclude summary judgment.

2          Other than those two "facts," Plaintiffs do not articulate facts Plaintiffs expect to discover

3   in the other depositions and documents Plaintiffs state have not yet been produced.  *See*

4   Bichegkueva Resp. at 16 (referencing an incomplete case file and the deposition of Wendy

5   Rogers, a claims manager).

6          Moreover, Plaintiffs filed their opposition to Defendant's motion for summary judgment

7   on July 22, 2016.  Fact discovery closed on August 4, 2016.  Despite obtaining additional

8   discovery, Plaintiffs have not attempted to supplement the record in the instant motion.

9          Additionally, the second basis for Plaintiffs' Rule 56(d) motion, the lack of attorney

10  invoices, is now moot because Plaintiffs have obtained the invoices.  In fact, Plaintiffs filed the

11  invoices in support of Plaintiffs' partial motion for summary judgment, filed on September 29,

12  2016.  ECF No. 67-5.  The Court has reviewed the invoices, and the invoices do not affect the

13  analysis in this order.

14         Accordingly, the Court finds that Plaintiffs have failed to meet their burden of showing

15  that additional discovery would provide additional facts that would preclude summary judgment.

16  Therefore, the Court DENIES Plaintiffs' Rule 56(d) request.

17         **G.     Evidentiary Objections**

18         The parties raise a number of objections to the evidence presented by the opposing party.

19  The Court first addresses Plaintiffs' objections and then addresses Defendant's objections.

20                 **1.     Plaintiffs' Objections**

21         First, Bichegkueva objects to certain parts of Defendant's Exhibit 3 to the Motion to

22  Summary Judgment as containing double hearsay.  ECF No. 40-3.  The document states that

23  "Attorney Aaron said Mr. Marentes' personal vehicle was in running condition on the date of

24  loss."  Bichegkueva Resp. at 25.  Hearsay is not admissible unless a specific exception applies.

25  Fed. R. Evid. 802.  To be hearsay, the statement must not have been made "while testifying at the

26  current trial or hearing" and the statement must be offered "to prove the truth of the matter

27  asserted in the statement."  Fed. R. Evid. 801(c).  However, a statement made "by the party's

28

43

United States District Court
Northern District of California

1  agent or employee on a matter within the scope of that relationship and while it existed" has been

2  defined as not hearsay under Federal Rule of Evidence 801(d)(2)(D).  Here, the statement is made

3  by Aaron, who was Marentes' attorney and agent at the time.  Additionally, the alleged second

4  layer of hearsay, that is, the underlying statement made by Marentes to Aaron that the car was

5  functioning is not hearsay because it is statement "made by the party opponent." Fed. R. Evid.

6  801(d)(2)(A).

7          Second, in Plaintiffs' Objection to Defendant's Reply Evidence, Plaintiffs also object to all

8  of the exhibits Defendant provides in support of its reply on the grounds that Defendant has failed

9  to show that the declarant authenticating the documents "has personal knowledge of the matters"

10  stated in the declaration.  ECF No. 55.  "A document authenticated through personal knowledge

11  must be attached to an affidavit, and the affiant must be a competent 'witness who wrote [the

12  document], signed it, used it, or saw others do so.'"  *Las Vegas Sands, LLC v. Nehme*, 632 F.3d

13  526, 533 (9th Cir. 2011) (citation omitted).  The exhibits Defendant attaches are purportedly

14  authenticated through the statements of Jamie Radack, an attorney at the Hayes firm.  ECF No. 54.

15  However, Jamie Radack did not write, sign, use, or see others write, sign, or use the documents

16  attached as supplemental exhibits.

17          Instead, Jamie Radack declares that she has personal knowledge of the documents based on

18  her review of the documents.  Under Rule 901(b)(4), "documents . . . could be authenticated by

19  review of their contents if they appear to be sufficiently genuine."  *Las Vegas Sands*, 632 F.3d at

20  533 (internal quotation marks and citation omitted).  Exhibit 18 is a photocopy of the cover of a

21  CD produced to Plaintiffs as a part of discovery accompanied by the CD contained.  ECF No. 53.

22  Radack's affidavit certifies that the emails listed below the photocopy of the CD were on that CD.

23  The affidavit does not alone show that the CD was produced to Plaintiffs or that the emails are

24  authentic as Radack does not indicate that she sent the CD or that she participated in the emails.

25  However, the cover of the CD is titled "Marentes v. State Farm," the instant suit, and is labeled

26  "State Farm's Production of Documents" and lists the Bates numbers "HSBEM0001-305." *Id.*

27  The attached emails then have Bates numbers in that range.  Finally, the contents of the emails

28

44

relate to the ongoing proceedings in the instant suit and *Marentes II*.  Together, these elements cause the emails to "appear to be sufficiently genuine."

Exhibit 19 is a letter sent from Stephen Ellingson, an attorney at the Hayes firm, to Bichegkueva's attorney on July 18, 2016, in which Ellingson seeks to meet and confer with Bichegkueva's attorney regarding discovery disputes.  This letter is written on the Hayes firm letterhead.  In addition, the document's substance involves disagreements over the submission of a joint discovery dispute report that was filed on July 19, 2016.  ECF No. 53 Ex. 19 at 7; ECF No. 44.  Thus, the letter appears to be sufficiently genuine.

Exhibit 20 is an email exchange between an attorney at the Hayes firm and an attorney for Plaintiffs, Jordan Stanzler, regarding the extension of discovery deadlines.  These emails contain a recitation of events that largely match the complaints of Plaintiffs regarding the speed with which Defendant's filed a motion for summary judgment and the delays involved in discovery in the instant suit. *See* Bichegkueva Resp. at 14–16.  Additionally, the emails are time-stamped and show that they were sent directly to Bichegkueva's attorney and Hayes.  Thus, the emails appear to be sufficiently genuine.

Exhibit 21 is Bichegkueva's deposition of Marentes from *Marentes I*, which took place on June 24, 2014.  The deposition contains the contact information for the court reporter service that provided the transcription services and identified the court reporter who transcribed the deposition as Katherine Kirby.  ECF No. 53 Ex. 21 at 1.  Bichegkueva's attorney took the deposition and Aaron, Marentes' attorney, defended the deposition.  *Id.* at 3.  Although the pages provided largely pertain to how the accident occurred and whether Marentes' other vehicles were operational, the deposition also contains other personal information about Marentes, such as his address, his level of education, and his work history.  *Id.* at 7, 57.  These details match evidence found elsewhere in the record.  Marentes Deposition at 23–24 (where Marentes went to high school and year of graduation), 17 (indicating that Marentes' primary car was operational).  Thus, the deposition appears to be sufficiently genuine.

### 2.     Defendant's Objections

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

Defendant has included, alongside its reply brief, objections to the evidence Plaintiffs provide with their Responses to Defendant's Motion for Summary Judgment.  ECF No. 51. Pursuant to Civil L.R. 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."  Thus, the Court strikes Defendant's objections, which were filed separately from Defendant's Reply brief.  ECF No. 50

## IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.  The Court DENIES Plaintiffs' Motion for Partial Summary Judgment, ECF No. 67, and Defendant's Administrative Motion to File a Sur-Reply, ECF No. 71, as moot.

**IT IS SO ORDERED.**

Dated: December 1, 2016

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 15-CV-05616-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT